**In the Matter of the Arbitration Between: Joseph KERSTING, et al., Respondents,**

v.

**ROYAL–MILBANK INSURANCE, Appellant.**

**No. C6–89–1987.**

Court of Appeals of Minnesota.

May 22, 1990.

to the arbitrator's award from the date of that award. We affirm.

## FACTS

Joseph Kersting was the owner and driver of a vehicle struck in the rear by a pickup owned by Raymond Joki and driven by his son. Liability for causing the accident was exclusively attributable to the Jokis. Joseph Kersting's automobile insurance applicable to the accident was provided by Royal–Milbank. The coverage included no-fault and underinsured motorist protections (UIM), and also provided for arbitration of UIM disputes.

As a result of the accident, Joseph Kersting claimed injuries primarily to his low back which eventually required surgery. Noreen Kersting claimed loss of consortium and services as a result of her husband's accident. The Kerstings commenced an action against the Jokis and also initiated a UIM arbitration proceeding against Royal–Milbank seeking to recover on their claims. As a consequence of the accident, Joseph Kersting received various monies, including $8,990.00 in disability income benefits provided and solely paid for by his employer.

Prior to the UIM arbitration hearing with Royal–Milbank, the Kerstings settled their liability claims against the Jokis and their insurer. Pursuant to *Schmidt v. Clothier*, 338 N.W.2d 256 (Minn.1983) and *Johnson v. American Family Mut. Ins. Co.*, 426 N.W.2d 419 (Minn.1988), the Kerstings provided Royal–Milbank with timely and sufficient notice of the proposed liability settlement. Royal–Milbank declined to substitute its payment for that of the Jokis' insurer as a prerequisite for preserving subrogation rights against the Jokis.

The UIM arbitration hearing was held before a three-person panel appointed by the parties. By agreement of the parties, the arbitrators were not advised of the liability limits of the Jokis' policy or of the specifics of the settlement between the Kerstings and the Jokis' insurer. Also by agreement of the parties, the arbitrators were requested to disregard liability cover-

Jerome R. Klukas, Castor, Klukas, Scherer & Logren, Minneapolis, for appellant.

Harry L. Newby, Jr., Newby, Lingren, Newby & Carlson, Cloquet, for respondents.

Considered and decided by WOZNIAK, C.J., and FOLEY and HUSPENI, JJ.

## OPINION

HUSPENI, Judge.

Appellant Royal–Milbank Insurance maintains that the trial court erred in concluding that the "collateral source statute" does not apply to reduce an arbitrator's underinsured motorist award by the amount of "accident and sickness" benefits paid the victim by his employer. Respondent Joseph Kersting argues that the trial court should have added statutory interest

age considerations and to determine only the value of the damage claims presented.

At the arbitration hearing the parties stipulated that Joseph Kersting received $8,990 in employer-provided accident and health insurance disability benefits as a result of the accident; that he had paid nothing for that insurance coverage; and that neither his employer nor the disability insurer was claiming a subrogation right or interest in recovering the $8,990 prior payments.

Pursuant to *Quam v. United Fire & Casualty Co.*, 440 N.W.2d 131 (Minn.App. 1989), and upon request of the parties, the arbitration panel agreed to specify in the award whether it deducted the $8,990 in assessing Joseph Kersting's loss of past earnings. Although the panel's arbitration award is not clear on its face, the parties are and have been in agreement throughout this proceeding that the panel did not deduct the $8,990.

Following issuance of the award, the Kerstings commenced an action pursuant to Minn.Stat. § 572.18 (1988) seeking trial court confirmation of the arbitrators' award and post-award interest on that amount through the time of entry of judgment. Royal–Milbank brought a cross-motion opposing allowance of post-award interest and seeking confirmation of the award subject to reductions, including a collateral source reduction of $8,990 pursuant to Minn.Stat. § 548.36 (1988). The trial court denied both the reduction and the request for post-award interest.

### ISSUES

1. Did the trial court err in refusing to reduce the Kerstings' arbitration award by the amount of "accident and sickness" benefits Joseph Kersting was paid by his employer?

2. Is Joseph Kersting entitled to statutory interest from the date of the arbitrators' award?

### ANALYSIS

#### I.

Royal–Milbank's challenge to the trial court's refusal to apply the collateral source statute, Minn.Stat. § 548.36, raises a legal issue of first impression before this court. On appeal, "[an appellate court] need not give deference to a trial court's decision on a legal issue." *Murphy v. Milbank Mutual Ins. Co.*, 438 N.W.2d 390, 393 (Minn.App.1989), *pet. for rev. denied* (Minn. June 9, 1989).

Under the collateral source statute,

In a *civil action*, whether based on contract or tort, when liability is admitted * * * and when damages include an award to compensate the plaintiff for losses available to the date of *the verdict* by collateral sources, a party may file a motion within ten days of the date of *entry of the verdict* requesting determination of collateral sources. If the motion is filed, the parties shall submit written evidence of, and the court shall determine:

(1) amounts of collateral sources that have been paid for the benefit of the plaintiff or are otherwise available to the plaintiff as a result of losses except those for which a subrogation right has been asserted; * * *

Minn.Stat. § 548.36, subd. 2 (emphasis added). Upon determining the collateral sources available to the plaintiff, the trial court "shall reduce the award by [that] amount[ ]." Minn.Stat. § 548.36, subd. 3(a). "Collateral sources" include:

payments related to the injury or disability in question made to the plaintiff, or on the plaintiff's behalf up to the date of *the verdict*, by or pursuant to:

\*      \*      \*      \*      \*      \*

(2) health, accident and sickness, or automobile accident insurance or liability insurance that provides health benefits or income disability coverage; * * *

\*      \*      \*      \*      \*      \*

(4) a contractual or voluntary wage continuation plan provided by employers or any other system intended to provide wages during a period of disability * * *.

Minn.Stat. § 548.36, subd. 1 (emphasis added). Further, this court has stated:

The [collateral source] statute prevents plaintiffs from recovering damages to the extent compensation is available from collateral sources. It has the apparent purpose of preventing windfalls by plaintiffs at the expense of defendants.

*Buck v. Schneider,* 413 N.W.2d 569, 572 (Minn.App.1987).

Royal–Milbank cites *Murphy v. Milbank Ins. Co.,* 438 N.W.2d 390, as controlling here because the *Murphy* court applied the collateral source statute to an arbitration award. Royal–Milbank also urges that the policy of avoiding double recovery requires application of the collateral source statute to arbitration awards. The Kerstings distinguish between verdicts and arbitrations and argue that an arbitration is not an "action" and, therefore, the collateral source statute has no application in this case.

### A. *Application of Murphy*

Murphy was killed while driving his employer's vehicle. The underinsured motorist carrier appealed from an arbitration award to Mrs. Murphy, and this court held that "the amount of uninsured motorist coverage should not be reduced by the amount of worker's compensation benefits." *Murphy,* 438 N.W.2d at 395 (citing *Murphy v. Milbank Mutual Ins. Co.,* 368 N.W.2d 753 (Minn.App.1985), *aff'd in part, rev'd in part* 388 N.W.2d 732 (Minn.1986)). After this court's 1985 opinion, the collateral source statute was enacted and, on remand, the trial court applied that statute and deducted the worker's compensation payment from the arbitration award. This court affirmed. *See Murphy,* 438 N.W.2d at 396. *See generally Murphy,* 438 N.W.2d at 392, 395–96.

The issue in *Murphy* was whether the trial court's reduction under the new statute was appropriate in light of this court's earlier opinion that the award should not

be reduced. *See Murphy,* 438 N.W.2d at 395–96. However, *Murphy* did not examine the threshold question of the applicability of the collateral source statute to arbitration proceedings. We cannot consider *Murphy* dispositive on an issue which was not argued to, considered by, or ruled upon by the *Murphy* court.

### B. *The Collateral Source Statute, Actions, and Arbitration*

"Statutorily, an arbitration decision is denominated an award," *Lucas v. American Family Mutual Insurance Co.,* 403 N.W.2d 646, 650 (Minn.1987); *see* Minn. Stat. § 572.15 (1986). Further, while the collateral source statute refers to "actions," "awards" and "verdicts," the word "award" used in the context of "action" or "verdict" refers to a specific component of the action or verdict. Thus, because an arbitration award does not involve a "verdict,"[1] we must determine whether the collateral source statute's use of the term "action" includes arbitration.

"[U]nless the context clearly indicates otherwise," Minn.Stat. § 645.45 (1988), an "'action' [is] any proceeding in any court of this state." Minn.Stat. § 645.45(2). In *Lucas,* 403 N.W.2d at 650, the supreme court cited this statutory definition of "action" and concluded "that 'action' [as used] in [the prejudgment interest statute] refers only to a judicial proceeding." The *Lucas* court then observed that "historically a proceeding in arbitration has not been deemed a judicial proceeding," *id.,* and refused to apply the prejudgment interest statute in the arbitration context. *Lucas,* 403 N.W.2d at 651. *See also McDonald v. City of West Branch, Michigan,* 466 U.S. 284, 287–88, 104 S.Ct. 1799, 1801–02, 80 L.Ed.2d 302 (1984). (In the labor law context, "[a]rbitration is not a judicial proceeding and, therefore [the Full Faith and Credit Act] does not apply to arbitration

---

1. To equate an arbitration award with a verdict, the arbitration panel would be analogous to the jury. This produces an inconsistency. While arbitrators must know of collateral sources in order to deduct them, under the collateral source statute:

The jury shall *not* be informed of the existence of collateral sources or any future benefits which may or may not be payable to the plaintiff.

Minn.Stat. § 548.36, subd. 5 (emphasis added).

awards" (footnote omitted)); *Har Mar, Inc. v. Thorsen & Thorshov,* 300 Minn. 149, 154, 218 N.W.2d 751, 755 (Minn.1974) ("Arbitration is not a common law action and the institution of arbitration proceedings is not the bringing of an action under any of our statutes of limitation" (citation omitted)).

■ We conclude that arbitration is not an "action" within the meaning of the collateral source statute. Thus, its language cannot require its application in arbitration proceedings. This conclusion is also supported by the arbitration act itself. *See generally* Minn.Stat. ch. 572. When an arbitration award is confirmed by a district court pursuant to Minn.Stat. § 572.18 (1988) "[t]he judgment or decree may be docketed *as if rendered in an action.*" Minn.Stat. § 572.22, subd. 2 (1988) (emphasis added). This phraseology indicates that arbitration is not a judicial action and that arbitration awards do not become equivalent to court determinations until the award is confirmed and judgment thereon is entered.[2]

Other aspects of arbitration also support a conclusion that the trial court did not err in refusing to deduct $8,990 from the arbitration award. Even if we were to accept for purposes of further analysis Royal–Milbank's argument that the collateral source statute applies to arbitration proceedings, we would still disagree as to the duty of the trial court to correct the arbitration panel's error in not applying the statute.

The supreme court has consistently emphasized the finality of arbitration, *see Aufderhar v. Data Dispatch, Inc.,* 452 N.W.2d 648, 651 (Minn.1990) ("We * * * have afforded to an arbitration award finality as to both facts and the law"); *Park Const. Co. v. Independent School District No. 32,* 216 Minn. 27, 33, 11 N.W.2d 649, 652 (1943) ("[f]inality of decision is one of the objects of arbitration"), and this concern regarding finality is codified in the arbitration act.[3] The grounds for vacating or modifying an arbitration award are specific and narrow. *See* Minn.Stat. §§ 572.-19; 572.20.

■ Additionally, under the arbitration act,

> the fact that the [arbitration panel's] relief was such that it could not or would not be granted by a court of law or equity is *not* ground for vacating or refusing to confirm the award.

Minn.Stat. § 572.19, subd. 1 (1988) (emphasis added). *See Johnson v. American Family Mutual Ins. Co.,* 426 N.W.2d 419, 421 (Minn.1988) ("a court will not even set aside an arbitration award because it thinks the arbitrators erred as to the law or facts, as long as the reasoning and judgment are consistent"); *Lucas,* 403 N.W.2d at 649 ("no statutory or case law authority exists giving the district court jurisdiction to vacate an award because the arbitrator(s) made an error of law"). Here, the alleged error was that of the arbitrators. Under existing case law, we believe the trial court lacked jurisdiction to modify the arbitration award.

### C. *Statutory Policies*

Royal–Milbank also argues that the policy against double recovery is violated if the arbitration award is not modified in this case. We are aware that one of the purposes of the state's no-fault insurance act is "to provide offsets to avoid duplicate recovery," Minn.Stat. § 65B.42(5) (1988). The same purpose is served by the collateral source statute. *See Buck,* 413 N.W.2d at 572. However, any inconsistency between this case and cases tried to a court or jury results from arbitration provisions in the policy issued by Royal–Milbank. Further, in *Lucas,* the supreme court rec-

---

**2.** Even assuming an arbitration to be a judicial action will not reconcile the statutes. Under the collateral source statute, "a party may file a motion within ten days of the date of entry of the verdict requesting determination of collateral sources." Minn.Stat. § 548.36, subd. 2. Because an arbitration award does not involve a verdict, it is unclear when the ten days would begin, and whether the motion would be filed with the arbitration panel or the district court.

**3.** This finality would be seriously and inappropriately impinged upon were we to rule, as Royal–Milbank urges, that confirmation of an arbitration award under Minn.Stat. § 572.18 was a sufficient judicial "action" to require application of the collateral source statute.

ognized that incongruities will arise between awards that result from arbitration and awards that result from litigation. Such incongruities were deemed to "involve a policy decision within the legislative sphere." *Lucas*, 403 N.W.2d at 651.

Royal–Milbank's ultimate request is that this court read into the collateral source statute a scope broader than indicated by the legislature. The language of section 572.19, subd. 1 is unambiguous. We cannot provide that which the legislature has chosen not to provide. By statute:

> [W]hen the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit.

Minn.Stat. § 645.16 (1988).

## II.

Joseph Kersting claims entitlement to prejudgment interest from the date of the arbitration award despite the fact that it was not awarded by the arbitration panel. We disagree.

In order to be eligible to receive prejudgment interest on an arbitration award, "a claimant need only submit a prejudgment interest request 'to the arbitration panel.'" *Jensen v. Illinois Farmers Ins. Co.*, 404 N.W.2d 880, 881 (Minn.App.1987) (quoting *Wanschura v. Western National Mutual Insurance Co.*, 389 N.W.2d 927 (Minn.App. 1986), *pet. for rev. denied* (Minn. Aug. 27, 1986)). Joseph Kersting cites his prearbitration letter to opposing counsel, indicating that prejudgment interest should be raised at the arbitration hearing, to support his claim that the issue actually was raised to the arbitration panel. Whether the issue was actually raised at the hearing is not relevant. If the claim was not raised to the panel, "[Joseph Kersting] waived his claim for pre-judgment interest." *Wanschura*, 389 N.W.2d at 928. Alternatively, in a context where the issue was raised but the arbitration award did not include prejudgment interest, the supreme court has stated:

> The [arbitration] statute does not permit the [trial] court to award prejudgment

interest where the application for arbitration included interest as an item of damage and none was awarded by the arbitrators. The proper procedure would have been to seek a modification or correction of the award under Minn.Stat. § 572.16.

*National Indemnity Co. v. Farm Bureau Mutual Ins. Co.*, 348 N.W.2d 748, 752 (Minn.1984). Thus, in either case the trial court did not err in denying Joseph Kersting's request for interest.

## DECISION

Because *Murphy v. Milbank Insurance Co.*, 438 N.W.2d 390 (Minn.App.1989), *pet. for rev. denied* (Minn. June 9, 1989), did not specifically address the applicability of the collateral source statute to arbitration, that case is not determinative here. Additionally, because the language of the collateral source statute does not require its application in arbitration proceedings, the trial court did not err in refusing to alter the arbitration award or in refusing to award prejudgment interest on that award.

Affirmed.