**Sandor AUSTIN, Respondent,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant.**

**No. CX–91–2561.**

Court of Appeals of Minnesota.

June 16, 1992.

Review Denied Aug. 4, 1992.

Kenneth N. Potts, Wayzata, for respondent.

Steven L. Viltoft, La Bore & Giuliani, Ltd., Hopkins, for appellant.

Considered and decided by HUSPENI, P.J., and FORSBERG and PETERSON, JJ.

## OPINION

HUSPENI, Judge.

State Farm appeals from a judgment confirming an arbitration award and refusing to reduce the award by the amount the injured party received from his employer's workers' compensation carrier. We affirm.

## FACTS

This appeal involves proceeds received by an injured driver from three separate sources. In 1988 Sandor Austin ("Austin") sustained serious back and neck injuries in the course of his employment when the car he was driving was hit from behind by another car. Austin sued the other driver, and settled for $30,000, the limit of the other driver's liability coverage. Austin also received $20,885.04 in medical expense benefits from his employer's workers' compensation carrier. He eventually settled his workers' compensation claim for an additional $29,500 and assignment of any subrogation rights of the workers' compensation carrier against the tortfeasor.

Austin then sued his own insurance carrier, State Farm, for underinsured motorist coverage. That claim was submitted to arbitration. The arbitrators awarded Austin a total of $80,885. That sum breaks down as follows:

$20,885 — Past medical expenses
5,000 — Future medical expenses
–0– — Past wages
–0– — Future wages
30,000 — Past pain and suffering
25,000 — Future pain and suffering

$80,885 — Total award

The arbitrators expressly deferred to the trial court the determination of which amounts already received by Austin should be deducted from the total award under the

collateral source rule, Minn.Stat. § 548.36 (1990).

The trial court decided that the total award should be reduced by $30,000, the amount of Austin's recovery from the tortfeasor. The trial court also decided that no further deduction be made for workers' compensation benefits. State Farm appeals, arguing that the collateral source rule should be applied to offset from the $80,885 arbitration award both the workers' compensation $20,885.04 medical expense payment and the $29,500 workers' compensation lump-sum disability payment.

## ISSUE

Did the trial court err as a matter of law in refusing to use the collateral source rule to reduce the amount of an arbitration award by the amount the injured party received through workers' compensation?

## ANALYSIS

█ The trial court's ruling in this case depended on its construction of Minn.Stat. § 548.36 (1990) (the collateral source rule) and the insurance contract between Austin and State Farm. The construction of a statute presents questions of law, and is therefore subject to *de novo* review on appeal. *Doe v. State Bd. of Medical Examiners*, 435 N.W.2d 45, 48 (Minn.1989). The interpretation of an insurance contract is also a question of law, and a reviewing court may examine *de novo* the language and insuring intent of the policies at issue. *Garrick v. Northland Ins. Co.*, 469 N.W.2d 709, 711 (Minn.1991).

State Farm argues that the trial court erred in refusing to apply the collateral source rule to reduce the arbitration award by the amount Austin received for past medical expenses. This court rejected the same argument in *Kersting v. Royal–Milbank Ins.*, 456 N.W.2d 270 (Minn.App. 1990). In *Kersting* the injured plaintiff received disability income benefits from his employer, and sued his own carrier for uninsured motorist coverage. When the issue of damages was submitted to arbitration, the panel awarded damages without deducting the amount the plaintiff received from his employer. On appeal, the insurer argued that the trial court should have deducted disability payments from the arbitration award. Considering the plain wording of the statute, this court held that the collateral source rule set forth in Minn. Stat. § 548.36 applies only to judicial proceedings. Since arbitration is distinguishable from judicial proceedings, we reasoned that trial court alteration of the arbitration award by application of the collateral source rule was not required and we affirmed the trial court's refusal to apply the rule.

We recognized in *Kersting*, 456 N.W.2d at 274, that there were competing public policies which would have been furthered by requiring the trial court to apply the collateral source rule to arbitration awards.

> [Appellant] argues that the policy against double recovery is violated if the arbitration award is not modified in this case. We are aware that one of the purposes of the state's no-fault insurance act is "to provide offsets to avoid duplicate recovery," Minn.Stat. § 65B.42(5) (1988). The same purpose is served by the collateral source statute. *See Buck [v. Schneider*, 413 N.W.2d 569, 572 (Minn.App.1987) ].

However, *Kersting*, 456 N.W.2d at 275, ultimately concluded that:

> [Appellant's] ultimate request is that this court read into the collateral source statute a scope broader than indicated by the legislature. The language of section 572.19, subd. 1 [ (1988) (regarding vacation or modification of an arbitration award) ] is unambiguous. We cannot provide that which the legislature has chosen not to provide.

We agree with respondent that *Kersting* must control the result here.[1] None-

---

1. State Farm fails to cite *Kersting* on appeal, even though it is directly on point, was argued by both parties to the trial court, and was the principal authority upon which the trial court relied in reaching its decision. In some cases, the failure to brief and argue an issue results in waiver. *Peterson v. Brown*, 457 N.W.2d 745, 749 (Minn.App.1990), *pet. for rev. denied* (Minn.

theless, we note once more that there are public policy issues which would be well served by amending Minn.Stat. § 548.36 to extend the applicability of the collateral source rule to arbitration awards. However, we, indeed, cannot provide that which the legislature has declined to provide.[2]

■ Austin next argues that even if the court were to assume that the collateral source rule *did* apply to arbitration awards, State Farm would not be entitled to a set-off here for the lump-sum workers' compensation disability benefits because the compensation carrier assigned back to Austin its right to recover from the tortfeasor. Benefits covered by the collateral source rule include amounts

> paid for the benefit of the plaintiff or [ ] otherwise available to the plaintiff as a result of losses except those for which a subrogation right has been asserted.

Minn.Stat. § 548.36, subd. 2(1). *See also Buck v. Schneider*, 413 N.W.2d 569 (workers' compensation benefits may not be subtracted from a damage award under the collateral source rule when the injured party receives an assignment of the workers' compensation carrier's subrogation rights as part of a settlement of the workers' compensation claim).

State Farm does not challenge the authority of *Buck*, and concedes that the workers' compensation carrier assigned its subrogation rights to Austin. However, State Farm argues that the subrogation rights are worthless because the workers' compensation carrier had no subrogation right against the proceeds of any *underinsured benefits* paid by State Farm to Austin. We agree. *See Cooper v. Younkin*, 339 N.W.2d 552, 553 (Minn.1983) (subrogation provisions apply to damages based on tort liability, not to sums the injured party is entitled to by contract with his own insurer). Nonetheless, State Farm's position on this issue must still fail.

Austin's workers' compensation carrier had a valid subrogation right against the proceeds paid by the *tortfeasor's insurer.* According to the formula set forth in Minn. Stat. § 176.061, subd. 6 (1990), the compensation carrier could petition the district court for reallocation of the proceeds of Austin's settlement with the tortfeasor.[3] *See Fryer v. National Union Fire Ins. Co.*, 365 N.W.2d 249, 255 (Minn.1985) (injured party's recovery from at-fault driver "might be" subject to workers' compensation subrogation claim). Therefore, contrary to State Farm's allegation, the subrogation rights received by Austin as part of his lump-sum workers' compensation settlement were not worthless. Even if the collateral source rule applied in this case, Austin would be entitled to keep this entire settlement, because he in fact possessed a valid subrogation interest.

■ Finally, State Farm argues that under its contract of insurance with Austin, State Farm is entitled to the same defenses and off-sets from damages as the tortfeasor would have. The policy states that State Farm will pay Austin for damages he "has not been compensated for" and is "legally entitled to recover" from the underinsured tortfeasor driver. State Farm argues that Austin has already been compensated for medical expenses and general damages by his workers' compensation carrier, and that Austin would not be legally entitled to recover these damages from the tortfeasor driver under the collateral source rule.

These arguments were considered and expressly rejected in *Fryer*. In addition the trial court here relied upon *Fryer* in

Aug. 23, 1990). Here, State Farm's failure to cite, and hence failure to challenge the applicability of, *Kersting* could be seen as a waiver of any argument against its applicability.

**2.** We note that during the 1992 legislative session, and consistent with these public policy concerns, Representative Simoneau and Senators Hottinger and Stumpf introduced legislation to overrule the *Kersting* decision by statute. We also note, however, that this legislation was not passed. *See* H.F. 2232, S.F. 2303, 77th Leg., 2d Sess. (1992).

**3.** Under Minn.Stat. § 176.061, subd. 6, the following formula would have been applied:

| | |
|---|---|
| $ 30,000 | settlement |
| − 10,000 | attorney fees |
| − 6,600 | to Austin |
| $ 13,400 | to workers' compensation insurer |

rejecting State Farm's argument on this issue. In *Fryer* the supreme court held that an insurance contract which provides that liability for uninsured motorist benefits must be reduced by the amount the injured party receives in workers' compensation benefits is unenforceable. The court observed that the application of such a reduction would

> shift the burden of loss for an auto accident from the auto injury reparations system to the workers' compensation system, and is inconsistent with the legislative coordination of the various reparation payments.

*Id.* at 255.

*Fryer* was decided before the collateral source statute became effective. Nonetheless, our decision in *Kersting* and here today that the collateral source rule has no applicability in arbitration proceedings permits the inference that *Fryer* continues to be a valid statement of the law.

## DECISION

The arbitration award is confirmed. State Farm has failed to present any argument that has not already been considered and rejected in past decisions. Until the legislature indicates otherwise, the collateral source rule does not apply to arbitration awards, and insurance provisions that would in effect circumvent this result are not enforceable.

Affirmed.