Jeffrey RAY, Appellant,

v.

The CITY OF MAPLE GROVE, Respondent.

No. C8–94–287.

Court of Appeals of Minnesota.

July 19, 1994.

Review Denied Sept. 16, 1994.

David M. Weigel, Russell H. Crowder, Coon Rapids, for appellant.

Mark J. Condon, Minneapolis, for respondent.

Considered and decided by FORSBERG, P.J., and LANSING and DAVIES, JJ.

## OPINION

DAVIES, Judge.

The district court confirmed an underinsured motorist arbitration award for appellant, interpreting the award to be in the amount of $25,152.94, which represents $90,-152.94 in damages found by the arbitrators, less payments that the underinsured driver's insurer made separately to appellant and to a subrogated workers' compensation carrier. Appellant argues that the arbitrators intended the total damages to be offset only by the amount received by him—exclusive of what the workers' compensation carrier received. We agree and reverse.

## FACTS

Appellant Jeffrey Ray was injured while on patrol as a police officer for the respondent City of Maple Grove. Ray had stopped a traffic violator and was in his squad car writing a ticket when Karl Amsler's car rearended the squad car.

Ray began collecting benefits from the city's workers' compensation carrier, Employee Benefit Administration Company, then began negotiating his personal injury claims with two liability carriers: (1) Amsler's insurer, Aetna Insurance Company; and (2) the city's underinsured motorist carrier, the League of Minnesota Cities Insurance Trust (the city).

Aetna settled Ray's claim against the driver—under a *Naig* agreement—for $42,500. Aetna then settled the workers' compensation carrier's subrogation claim—under a reverse-*Naig* agreement—for $22,500. Aetna sent separate checks to Ray and the workers' compensation carrier.

After unsuccessfully negotiating his underinsured motorist claim with the city (i.e., League of Minnesota Cities Insurance Trust), Ray asked for arbitration. A panel of three arbitrators found that Ray suffered $90,152.94 in damages, but held that:

2. Deducted from this Award shall be all monies paid by any liability insurance carriers. Pursuant to the decisions in *Kersting v. Royal–Milbank Ins. Co.,* 456 N.W.2d 270 and *Austin v. State Farm Mutual Automobile Ins. Co.,* 486 N.W.2d 457, it is the Arbitrators' decision that the sums of money paid by the workers' compensation carrier for medical expense and wage loss should not be deducted as a set-off from Claimant's Award. Attorney for Respondent disagreed with that decision and specifically did not agree that he was submitting that issue to the Arbitrators for their decision, as he considers that a question of law and not fact.

Ray moved to confirm this arbitration award, arguing that the size of the judgment must be the amount of the damage determination ($90,152.94), minus only the amount paid *to him* by Aetna ($42,500), for a total of $47,652.94. The city responded that the award must be subject to an additional deduction of $22,500, the amount paid *to the* workers' compensation carrier, for a total

award of $25,152.94. The district court adopted the city's interpretation.

This appeal followed.

## ISSUES

I. If the arbitration award should properly be interpreted to deny a deduction for the workers' compensation payments, would the award then conflict with the no-fault insurance act's prohibition against double recovery?

II. Did the district court err in interpreting the underinsured motorist arbitration award as requiring deduction of workers' compensation subrogation?

## ANALYSIS

### I.

■ The city argues that Ray's interpretation of the arbitration award causes a double recovery, in conflict with the Minnesota No–Fault Automobile Insurance Act. We addressed, and rejected, double-recovery arguments in *Kersting v. Royal–Milbank Ins.*, 456 N.W.2d 270 (Minn.App.1990), and *Austin v. State Farm Mut. Auto. Ins.*, 486 N.W.2d 457 (Minn.App.1992), *pet. for rev. denied* (Minn. Aug. 4, 1992). In *Kersting*, the insurer argued that the collateral source statute, Minn.Stat. § 548.36, applies to reduce an arbitrator's underinsured motorist award by the amount of "accident and sickness" benefits paid the victim by his employer. 456 N.W.2d at 271. We rejected the insurer's argument, based on the plain language of the statute and because

arbitration is not an "action" within the meaning of the collateral source statute [and therefore] its language cannot require its application in arbitration proceedings.

*Id.* at 274.

In *Kersting*, we also recognized that there were competing public policies that would have been furthered had we applied the collateral source statute, specifically noting:

We are aware that one of the purposes of the state's no-fault insurance act is "to provide offsets to avoid duplicate recovery," [and that the] same purpose is served by the collateral source statute.

*Id.* (citation omitted). Notwithstanding this concern, we rejected the insurer's argument. *Id.* at 274–75.

Two years later, in *Austin*, we cited our decision in *Kersting* and rejected nearly the same argument—that the collateral source rule required offsetting an arbitration award by the amount the injured party received through workers' compensation. 486 N.W.2d at 459. In holding that *Kersting* controlled the result, we once again noted that

there are public policy issues which would be well served by amending Minn.Stat. § 548.36 to extend the applicability of the collateral source rule to arbitration awards. However, we, indeed, cannot provide that which the legislature has declined to provide.

*Id.* at 460.

Thus, because our decisions in *Kersting* and *Austin* control, we reject the city's argument that a failure to offset the award with the payments made to the workers' compensation carrier causes a double recovery in conflict with the Minnesota No–Fault Automobile Insurance Act.

### II.

We turn next to the interpretation issue.

■ The arbitration award states, "Deducted from the award shall be all monies paid by any liability insurance carriers." The issue is whether the arbitrators meant: (1) only monies paid directly to Ray, or (2) all monies paid to Ray *both directly and indirectly through the subrogated workers' compensation carrier.* Ray argues that the district court's decision should be reversed because the first interpretation is correct; the city argues, and the district court agreed, that the second interpretation is correct.

Ray sought to confirm the arbitration award pursuant to Minn.Stat. § 572.18. Under this section, "the court shall confirm an award, unless * * * grounds are urged for vacating or modifying or correcting the award." Minn.Stat. § 572.18 (1992). We typically review section 572.18 appeals under the extremely narrow standard set forth in *Grudem Bros. Co. v. Great Western Piping*

*Corp.*, 297 Minn. 313, 213 N.W.2d 920 (1973). Under this standard of review,

> [t]he arbitrators make the final determination of all questions submitted to them whether legal or factual. The court will not overturn these conclusions even if it believes the arbitrators made an incorrect conclusion.

*Id.* at 316–17, 213 N.W.2d at 922–23.

But here, unlike a typical section 572.18 case, neither party argues (at least on this interpretation issue) that the award should be vacated, modified, or corrected; instead, they disagree over how the award should be read. A reviewing court must have the authority to construe an arbitration award to be able to enforce the award. *San Francisco Elec. Contractors Ass'n v. International Bhd. of Elec. Workers, Local No. 6*, 577 F.2d 529, 534 (9th Cir.), *cert denied*, 439 U.S. 966, 99 S.Ct. 455, 58 L.Ed.2d 425 (1978).

Ray argues that the district court clearly erred because the arbitrators specifically stated that workers' compensation payments must not be set off from the award on the basis of *Kersting* and *Austin*.

Ray argues that the arbitrators' inclusion of these cases evidences their intent to deny any offset for the workers' compensation subrogation settlement.

The city argues that these cases are distinguishable. But the city misses the point. Even if the cases can be distinguished, the arbitrators' citation of them in the award is relevant to the arbitrators' intent. Thus, we agree with Ray that the trial court erred by reading the award to require subtraction of the workers' compensation subrogation settlement.

■ We also agree with Ray's alternative argument that the underinsured motorist statute indicates that the trial court erred in offsetting the subrogation settlement.

Before 1989 the statute read:

> With respect to underinsured motor vehicles, the maximum liability of an insurer is the lesser of the difference between the limit of underinsured motorist coverage and the amount *paid to the insured* by or for any person or organization who may be held legally liable for the bodily injury; or the amount of damages sustained but not recovered.

Minn.Stat. § 65B.49, subd. 4a (1988) (emphasis added). This statute required deductions only for payments "to the insured." *See Johnson v. American Family Mut. Ins.*, 426 N.W.2d 419, 422 n. 1 (Minn.1988) ("[U]nder the current statute, an insurer must receive credit against the limits of underinsured motorist coverage for any amount previously paid *to the injured party*.") (emphasis added) (citing Minn.Stat. § 65B.49, subd. 4a (1986)).

The law was amended in 1989, removing the qualifying language "paid to the insured." The post–1989 version of the statute provides:

> With respect to underinsured motorist coverage, the maximum liability of an insurer is the amount of damages sustained but not recovered from the insurance policy of the driver or owner of any underinsured at fault vehicle.

Minn.Stat. § 65B.49, subd. 4a (1990). The legislature's revision of subdivision 4a does not affect Ray's argument, however, because the workers' compensation carrier did not "sustain damages." Both before and after the amendment, the workers' compensation carrier's receipt of $22,500 did not fall under the offset requirements of the statute.[1]

Finally, the city argues that the result here is controlled by this court's decision in *Beukhof v. Minnesota Mutual Fire & Casualty*, 502 N.W.2d 223 (Minn.App.1993), *pet. for rev. denied* (Minn. Aug. 6, 1993). But *Beukhof* addresses a concern that married couples may redesign loss of consortium liability settlements to defeat appropriate setoff. Here there is no such concern.[2]

---

1. Although this court's limited review of an arbitrator's decision is well settled, the Minnesota Supreme Court authorizes courts to conduct de novo review of arbitration awards interpreting the no-fault statute, rather than having various panels of arbitrators interpret that act. *Johnson*, 426 N.W.2d at 421.

2. Ray also argues that the arbitrators' failure to qualify "paid" leaves it with a meaning similar to its meaning in other sections in the no-fault statute where the word "paid" implies that the injured person is the intended object. Based on

## DECISION

The district court erred in interpreting appellant's underinsured motorist arbitration award. Although the potential for a double recovery exists, the award should only be offset by the amount actually received by appellant.

**Reversed.**

LANSING, J., concurs specially.

FORSBERG, J., dissents.

LANSING, Judge (concurring specially).

I agree that the arbitrators denied setoff of the workers' compensation payments, but I concur in allowing what appears to be a double recovery only because I believe *Kersting* and *Austin* are controlling. *See Austin v. State Farm Mut. Auto. Ins.*, 486 N.W.2d 457 (Minn.App.), *pet. for rev. denied* (Minn. Aug. 4, 1992); *Kersting v. Royal–Milbank Ins.*, 456 N.W.2d 270 (Minn.App.1990).

FORSBERG, Judge (dissenting):

I respectfully dissent since I believe that the decision is contrary to *Beukhof v. Minnesota Mut. Fire & Cas.*, 502 N.W.2d 223 (Minn.App.1993), *pet. for rev. denied* (Minn. Aug. 6, 1993). Plaintiff received workers' compensation benefits from the workers' compensation carrier, and now is receiving the same subrogated amount in the tort case. It sounds like double payment to me.

our holdings on the previous issues, we need not    address this issue.