WESTERN NATIONAL MUTUAL
INSURANCE COMPANY,
Petitioner, Appellant,

v.

Raymond CASPER, Respondent.

No. C2–94–2441.

Supreme Court of Minnesota.

June 20, 1996.

Dan Ryerson and James Martin, Gislason, Martin & Varpness, PA, Edina, for appellant.

James Larkin, Larkin, Hoffman, Daly & Lindgren, Ltd., Bloomington, for respondent.

## OPINION

COYNE, Justice.

On February 13, 1989, Raymond Casper sustained a work-related injury when Robert Johnson negligently rear-ended Casper's vehicle while it was stopped for the red light displayed by a semaphore. Casper's employer and workers' compensation insurer accepted liability for benefits pursuant to the Workers' Compensation Act and paid medical expenses, periodic compensation benefits, and economic recovery compensation for permanent partial liability.

Pursuant to the third-party liability provisions of Minn.Stat. § 176.061, subd. 5 (1994), Casper commenced an action against Johnson to recover common law damages. That action was settled prior to trial by payment of the liability limits of Johnson's automobile insurance policy—$50,000. The proceeds of that settlement were distributed pursuant to Minn.Stat. § 176.061, subd. 6 (1994): After deducting $16,500, the reasonable cost of collection, including attorney fees, one-third of the remainder, $13,589.15, was paid to Casper; and the balance remaining, $19,910.85, was paid to Casper's employer in partial reimbursement of the workers' compensation benefits the employer had paid Casper.

In the meantime, Casper claimed entitlement to underinsured motorist benefits provided by his employer's automobile insurance policy. The policy, issued by Western National Mutual Insurance Company, insured the vehicle Casper was driving at the time of the accident.

The insuring agreement of the underinsured motorist coverage provided by the Western National auto policy makes this promise:

The company will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an [underinsured][1] highway vehicle because of bodily injury sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such [underinsured] highway vehicle; provided, for the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration.

Evidently, Casper and the insurer did not agree on the amount of damages Casper was entitled to recover from Johnson, the operator of the underinsured vehicle, because in May of 1993 Casper commenced an arbitration proceeding seeking underinsured motorist benefits under the Western National auto policy. On December 4, 1993 a panel of three arbitrators issued the following award:

| | | |
|---|---|---|
| 1. | Past pain, suffering, and emotional distress: | $ 20,000 |
| 2. | Past disability: | 5,000 |
| 3. | Past loss of earnings: | 40,000 |
| 4. | Past medical expenses: | None presented |
| 5. | Future pain, suffering, and emotional distress: | 25,000 |
| 6. | Future loss of earnings: | 30,000 |
| 7. | Future medical expenses: | None claimed |
| | Total | $120,000 |

In addition to the monetary award, this statement appeared above the arbitrators' initials:

The issue of collateral source offsets was not submitted to the arbitrators and was not considered by them. The W.C. decision was not considered by the arbitrators.

It may be helpful to note that shortly before issuance of the arbitration award, a workers' compensation judge had found Casper permanently totally disabled from and after November 23, 1992. The workers' compensation court of appeals affirmed that determination with some modification of the extent of impairment of Casper's lumbar spine.

■ Western National contends that it is entitled to set off against the arbitration award the $50,000 paid by Johnson's insurer pursuant to the agreement for settlement of Casper's action against Johnson and that it is also entitled to an offset equal to all workers' compensation benefits paid Casper together with the present value of all future payments. The district court ruled that only the net amount Casper received from the settlement proceeds could be set off from the amount of the award, and the court of appeals affirmed in an unpublished opinion. *Western Nat'l Mut. Ins. Co. v. Casper,* No. C2-94-2441, 1995 WL 238767 (Minn.App., Apr. 25, 1995). With respect to this issue we reverse. The general purpose of underinsured motorist coverage is to place the insured in as good a

---

**1.** By endorsement the Western National policy provides that the coverage afforded with respect to an "uninsured highway vehicle" is also applicable to an "underinsured highway vehicle." For purposes of this opinion the term "underinsured" is substituted for "uninsured" in the insuring agreement.

position as he would have occupied had the negligent motorist been adequately insured. Casper entered into a settlement agreement with Johnson for a stated consideration of $50,000. That the Workers' Compensation Act mandates distribution of the proceeds of Casper's settlement does not reduce the amount of the tortfeasor's automobile insurance. Neither does it convert any portion of the settlement proceeds payable to others than Casper for collection costs and satisfaction or partial satisfaction of the employer's subrogation interests into something other than proceeds of a settlement paid by Johnson's automobile insurer. Perhaps the point can be illustrated by this hypothetical: Let us assume that Casper's damages were exactly $50,000 and that Casper's claim was settled for $50,000. Inasmuch as it is perfectly apparent that under such circumstances Johnson's automobile insurance was fully adequate to compensate Casper for all his damages, the facts that Casper was obligated to use part of the proceeds to pay the costs of collection and that the Workers' Compensation Act required Casper to reimburse his employer for the workers' compensation benefits paid Casper (less the employer's pro rata share of the collection costs) do not make Johnson's automobile underinsured.

■ We hold, therefore, that Western National is entitled to reduce the arbitration award by offset of the $50,000 Casper received pursuant to his settlement agreement with Johnson and Johnson's automobile insurer. We affirm, however, the ruling that the arbitration award is not subject to reduction by the amount of the workers' compensation benefits paid Casper or by the present value of all future workers' compensation benefits.

Western National's second contention is that what it calls the "reducing clause" of its underinsured motorist coverage entitles it to set off against the arbitration award an amount equal to all workers' compensation payments paid to Casper and the present value of all future payments on account of past disability and past and future loss of earnings. The "reducing clause," which appears in the Limits of Liability section of the

underinsured motorist coverage, provides as follows:

LIMITS OF LIABILITY

* * * *

(a) * * * *

(b) Any amount payable under the terms of this insurance because of bodily injury sustained in an accident by a person who is an insured under this coverage shall be reduced by

    (1) all sums paid on account of such bodily injury by or on behalf of

        (i) the owner or operator of the [underinsured] highway vehicle and

        (ii) any other person or organization jointly or severally liable together with such owner or operator for such bodily injury,

including all sums paid under the bodily injury liability coverage of the policy. [sic] and

    (2) the amount paid and the present value of all amounts payable on account of such bodily injury under any workmen's compensation law, disability benefits law or any similar law.

(c) * * * *

Western National recognizes that this court has twice declared a provision which reduces uninsured or underinsured motorist coverage by amounts of workers' compensation benefits paid the insured invalid as against public policy. *Fryer v. National Union Fire Ins. Co.*, 365 N.W.2d 249, 255 (Minn. 1985); *Brunmeier v. Farmers Ins. Exch.*, 296 Minn. 328, 331–32, 208 N.W.2d 860, 862 (1973). Western National contends, however, that the adoption in 1986 of Minn.Stat. § 548.36, which deals with collateral source payments, has so undermined the rationale of *Fryer* and *Brunmeier* that we should now overrule or modify them.

Assuredly, section 548.36, the collateral source statute, alters the old common law measurement of the damages recoverable from a tortfeasor. First, the statute defines "collateral sources" as payments related to the injury and paid to the plaintiff up to the date of the verdict. Listed payments include those made pursuant to a state workers'

compensation act; health or income disability benefits from insurance; health care services pursuant to contract; or wage continuation plan provided by employer. Minn.Stat. § 548.36, subd. 1 (1994). Subdivision 2 of section 548.36 provides for calculation of the amount of collateral sources:

> Subd. 2. **Motion.** In a civil action, whether based on contract or tort, when liability is admitted or is determined by the trier of fact, and when damages include an award to compensate the plaintiff for losses available to the date of the verdict by collateral sources, a party may file a motion within ten days of the date of entry of the verdict requesting determination of collateral sources. If the motion is filed, the parties shall submit written evidence of, and the court shall determine:

> (1) amounts of collateral sources that have been paid for the benefit of the plaintiff or are otherwise available to the plaintiff as a result of losses except those for which a subrogation right has been asserted; and

> (2) amounts that have been paid, contributed, or forfeited by, or on behalf of, the plaintiff or members of the plaintiff's immediate family for the two-year period immediately before the accrual of the action to secure the right to a collateral source benefit that the plaintiff is receiving as a result of losses.

At subdivision 3 the statute sets out the duties of the court:

> (a) The court shall reduce the award by the amounts determined under subdivision 2, clause (1), and offset any reduction in the award by the amounts determined under subdivision 2, clause (2).

> (b) If the court cannot determine the amounts specified in paragraph (a) from the written evidence submitted, the court may within ten days request additional written evidence or schedule a conference with the parties to obtain further evidence.

> (c) In any case where the claimant is found to be at fault under section 604.01, the reduction required under paragraph (a) must be made before the claimant's damages are reduced under section 604.01, subdivision 1.

■ Briefly stated, the collateral source statute limits the amount a plaintiff is legally entitled to recover from a tortfeasor. Inasmuch as the insuring agreement of the underinsured motorists coverage provided by Western National's policy contemplates payment to the insured of no more than the amount the insured is legally entitled to recover from the underinsured motorist, it is apparent that an arbitration award equal to legal entitlement must be calculated pursuant to Minn.Stat. § 548.36 (1994).

We are aware that the court of appeals has on at least three occasions ruled that a court cannot modify an arbitration award by application of the collateral source statute because section 548.36 is, by its terms, limited to civil actions. *Ray v. City of Maple Grove,* 519 N.W.2d 466, 468 (Minn.App.1994), *pet. for rev. denied* (Minn., Sept. 16, 1994); *Austin v. State Farm Mut. Auto. Ins. Co.,* 486 N.W.2d 457, 459 (Minn.App.1992), *pet. for rev. denied* (Minn., Aug. 4, 1992); *Kersting v. Royal–Milbank Ins.,* 456 N.W.2d 270, 274–75 (Minn. App.1990). In each of those cases, however, the issue was raised in connection with a motion for confirmation of the award when the insurer requested the court to make the calculation provided by section 548.36 and to reduce the award by the amount the court so determined. We do not suggest, however, that the court should determine the amounts paid by collateral sources and reduce the arbitration award on a motion for confirmation. Not only does the statute refer to the award of damages in a civil action, but asking a court to reduce an arbitration award presents seemingly insurmountable problems: the court did not participate in the arbitration proceeding and, because the arbitration proceeding was unreported, has no means of ascertaining what damages paid by collateral sources were put in evidence and included in the award.

In short, it is the arbitrators who, in arriving at their award, must determine the amounts paid by collateral sources which have been included in the gross award and who must then calculate the net award accordingly. Only when the amount actually awarded the insured equals the amount the

insured is legally entitled to recover as damages from the underinsured motorist have the arbitrators fulfilled their obligation to determine the amount, if any, the insured is entitled to recover from the underinsured motorist insurer and also carry out the policy implemented by the statute—preclusion of double recovery.

■ Western National contends, however, that its "reducing clause" requires reduction of the arbitration award without reference to the collateral source statute and that because it had paid temporary total disability benefits, Casper's medical expenses, and because it calculated the present value of Casper's right to future periodic payments of permanent total disability benefits at $274,000, Western National owed Casper nothing under the underinsured motorist coverage. Merely stating the contention exposes its vulnerability. Western National attacks *Fryer v. National Union Fire Ins. Co.*, 365 N.W.2d 249, 255 (Minn.1985), and *Brunmeier v. Farmers Ins. Exch.*, 296 Minn. 328, 331–32, 208 N.W.2d 860, 862 (1973), on the ground that the subsequent adoption of the collateral source statute reflects a strong policy for prevention of double recovery which justifies validation of its "reducing clause." Western National's suggested remedy is, however, a good deal broader than the policy it purports to implement. Simply reducing the arbitration award by the total workers' compensation benefits, including medical expenses, already paid the insured, and by the present value of all future payments, regardless whether such amounts were included in the award can hardly be said to promote a public policy against double recovery. Moreover, the collateral source statute does not contemplate reducing a verdict by reason of future payments from collateral sources. Consequently, we are of the opinion that the collateral source statute was not intended to shift the burden of loss for an auto accident from the auto injury reparations system to

the workers' compensation system. For that reason we are also of the opinion that the rationale of *Fryer* and *Brunmeier* was not impaired by the adoption of the collateral source statute and still flourishes today.

Despite the arbitrators' notation that they did not consider the issue of collateral source offsets, a review of the amount awarded for specified types of damages suggests that there is little likelihood that Casper has realized a double recovery. Western National[2] assures us that it had paid workers' compensation disability benefits of $106,493.51 by September 28, 1994, in addition to Casper's medical bills and rehabilitation expense. Inasmuch as workers' compensation benefits payable during temporary total disability amount only to 66⅔ percent of the employee's weekly wage at the time of injury, the $40,000 arbitration award for past loss of earnings appears to cover only Casper's uncompensated wage loss. The award states that the employee did not present any past medical expenses and did not claim any future medical expenses. In short, the arbitration award rather closely resembles what we are accustomed to call a "*Naig* settlement"—a settlement agreement which includes only those damages not compensable pursuant to the Workers' Compensation Act. *See Naig v. Bloomington Sanitation*, 258 N.W.2d 891 (Minn.1977).

In our view it is for the underinsured motorist insurer either to present evidence of the workers' compensation benefits paid to the date of the arbitration and to request that the award demonstrate that the amount of those benefits has been included in the award and then deducted from the award or to request that the award show that it does not include any award for damages compensated by workers' compensation. Nothing in the record before us suggests that the award in this case includes compensation for damages already recovered through workers' compensation benefits. Neither does it dis-

2. We have heretofore refrained from identifying Casper's employer's workers' compensation insurer because it seems to us quite possible that the fortuity that Western National is the workers' compensation insurer as well as the underinsured motorist coverage insurer may have caused some confusion in the disposition of this issue. It must be remembered, however, that regardless of the identity of the workers' compensation insurer, any reimbursement of workers' compensation benefits is a function of the Workers' Compensation Act, not the provisions of the underinsured motorist coverage.

close a request to limit the award to those damages which Casper is legally entitled to recover from Johnson, taking into consideration the requirements of Minn.Stat. § 548.36 (1994).

Therefore, we affirm confirmation of the arbitrators' award in the amount of $120,000 and reverse the order limiting the offset against the award to the $13,589.15 Casper received in the distribution of the $50,000 payment by Johnson and his insurer.

Affirmed in part, reversed in part.