**In re the Arbitration of Richard G. FRYER, Respondent,**

v.

**NATIONAL UNION FIRE INSURANCE COMPANY, Appellant.**

**No. C8–83–1444.**

Supreme Court of Minnesota.

April 5, 1985.

Louis R. Tilton, Minneapolis, for appellant.

Jerome E. Kline, Minneapolis, for respondent.

SIMONETT, Justice.

The Court of Appeals held that an arbitration claim for uninsured motorist benefits was arbitrable and not subject to a reduction for workers' compensation paid, and, as had the district court, affirmed the arbitration award. *See Fryer v. National Union Fire Insurance Co.*, 346 N.W.2d 353 (Minn.App.1984). We granted the insurer's petition for further review. We affirm in part and reverse in part and remand.

On April 12, 1981, claimant Richard G. Fryer, then on duty as a police officer for the City of Brooklyn Park, was injured when his patrol car was rear-ended. The owners of the car which struck Fryer's patrol car were insured with Illinois Farmers Insurance Group, and the nonowner driver of the car was separately insured with American Family Insurance Group. Fryer promptly applied for and began receiving workers' compensation benefits from the City of Brooklyn Park. Fryer learned on investigation that Illinois Farmers and American Family each had liability policy limits of $25,000. On the other hand, Fryer's employer, the city, had a liability insurance policy with respondent National Union Fire Insurance Company, with $500,000 uninsured motorist coverage and a like amount of underinsured motorist coverage.

On October 13, 1981, Illinois Farmers, insurer of the owners of the other car, denied coverage on the grounds of nonpermissive use, the owners having apparently reported the car stolen. On March 9, 1982, American Family, insurer of the driver, also denied coverage on the grounds of nonpermissive use. Consequently, on September 14, 1982, Fryer formally submitted a demand on National Union for arbitration of his claim for uninsured motorist benefits. National Union accepted the demand and, by late December 1982, a panel of three arbitrators had been selected. About this same time, National Union commenced a separate declaratory judgment action in Hennepin County District Court, joining all interested parties, for the purpose of contesting the denial of coverage by the liability carriers and determining what liability insurance coverage there might be.

The arbitration hearing, after some scheduling problems, was set for April 25, 1983. National Union had been attempting to get a copy of American Family's policy and finally was successful on April 14. Upon review of the policy, National Union's counsel advised American Family that it appeared American Family's denial of coverage was in error. On April 20, American Family agreed it did have liability coverage for the driver and so advised all parties by telephone. The next day, Thursday, April 21, American Family's counsel wrote a let-

ter to all parties admitting coverage, adding, "The only question is whether my client's coverage is primary or secondary, a question which is presented by your declaratory judgment action."

On the following Monday, April 25, when the parties met for the arbitration hearing, National Union objected to proceeding on the ground there was no longer any uninsured motorist claim to arbitrate. The arbitration panel, nevertheless, decided to proceed, stating it would "render a decision as to the liability and damages only," leaving to the courts later the question of insurance coverage. The hearing was held and the panel filed its decision that "Fryer's damages as a result of the automobile accident" were $69,000.

National Union then moved in district court to vacate or modify the arbitration award. The district court ruled that the liability insurer's subsequent admission of coverage was ineffective, that claimant had an uninsured motorist claim under National Union's policy, and that the arbitration award be confirmed. National Union appealed this decision to the Court of Appeals, which affirmed the district court. We granted further review.

Under its policy, National Union agrees to pay its insured, Fryer, all sums the insured is legally entitled to recover as damages from the owner or driver of an "uninsured motor vehicle." The policy endorsement contains four different definitions of an uninsured motor vehicle,[1] and at the arbitration hearing and again before the Court of Appeals and this court, the parties centered their attention on the third definition, namely, an uninsured motor vehicle is one "[f]or which an insuring or bonding company denies coverage." National Union contends that because American Family retracted its denial of liability coverage before the arbitration hearing, there is no uninsured motor vehicle involved and, consequently, there is no uninsured motorists coverage under its policy. Claimant Fryer, on the other hand, argues that American Family's retraction of its denial of coverage was ineffective.

The Court of Appeals agreed with claimant. It held that a retraction of a denial of liability coverage was "without contractual support," so that the motor vehicle remained "uninsured" under National Union's policy definition. The Court of Appeals also stated that American Family's admission of liability coverage was qualified, leaving the question of uninsured motorist coverage "still in some doubt," and was made "at the last minute." It also noted that both the No-Fault Act and arbitration favor prompt resolution and payment of compensation to auto accident victims.

## I.

First of all, we hold that the arbitration panel, when confronted with the objection to arbitrability, did not err in proceeding to arbitrate the claim before it. When arbitrability is reasonably debatable, the arbitrators may proceed. *United States Fidelity & Guaranty Co. v. Fruchtman*, 263 N.W.2d 66, 71 (Minn.1978). Here the panel was confronted with the threshold issue of whether Fryer's claim qualified as an uninsured motorist claim under National Union's policy once American Family had admitted liability coverage. After American Family's admission, National Union did not seek to stay arbitration to get a judicial ruling on its own uninsured coverage (nor, practically, was there time to do

1. The National Union policy provides:

"*Uninsured motor vehicle*" means a land motor vehicle or trailer:
a. For which no liability bond or policy at the time of an *accident* provides at least the amounts required by the applicable law where a covered *auto* is principally garaged, or
b. For which the sum of all liability bonds or policies at the time of an *accident* provides at least the amounts required by the applicable law where a covered *auto* is principally garaged but their limits are less than the limit of this insurance, or
c. For which an insuring or bonding company denies coverage or is or becomes insolvent, or
d. Which is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must hit an *insured*, a covered *auto* or a vehicle an *insured* is *occupying*.

so), but chose, instead, to make its objection on the record, thus preserving the issue of uninsured motorist coverage for judicial determination later in a proceeding in district court to vacate the arbitration award. We have approved this optional procedure. *See, e.g., Woog v. Home Mutual Indemnity Co.,* 340 N.W.2d 863 (Minn. 1983) (trial court vested with jurisdiction to make *de novo* review of arbitrability of disputed issues of coverage).

■ Arbitrability goes to the question of whether the scope of the arbitration clause in the insurance contract encompasses the coverage issue in dispute so that the arbitrators may decide the coverage issue. Here, in deciding to go ahead, the arbitration panel impliedly ruled that the arbitrability issue was reasonably debatable, and so it proceeded to make an award, although declining to rule on the coverage issue. In any event, the coverage issue is now before us. It should be kept in mind that the coverage issue before the arbitration panel and before us now is that of uninsured motorist coverage under National Union's policy, not liability coverage under American Family's and Illinois Farmers' policies.

## II.

The main issue on this appeal, then, is whether there was any uninsured motorist claim to arbitrate. If not, the arbitrators "exceeded their powers," Minn.Stat. § 572.-19, subd. 1(3) (1984), and the award must be vacated. We confirm the award, but not on the grounds stated by the Court of Appeals.

■ In our view, the policy language that an uninsured motor vehicle is one for which the liability insurer "denies coverage," means just that. So long as the denial exists, the motor vehicle is deemed to be uninsured under National Union's policy. But a denial does not persist after it is withdrawn. If at the time of the arbitration hearing there has been a retraction of the denial and an admission of coverage, the law does not blind itself to the fact that the motor vehicle is, indeed, insured. The Court of Appeals expressed

concern about an admission of liability coverage that occurs after the arbitration award is made, but, aside from the fact that is not this case, a postarbitration admission of coverage involves entirely different considerations. Claimant's position seems to be that National Union should have put language in its policy reserving the right to recognize a subsequent admission of coverage. But this contention assumes a denial of coverage once made cannot be unmade, which language is not in the policy either. We think the policy language, as it is, speaks plainly.

Nor do we believe American Family's admission of coverage was in doubt. The fact that American Family claimed that Illinois Farmers should pay its coverage first in no way detracts from the fact that American Family admitted it had $25,000 liability coverage for the car regardless of whether Illinois Farmers had coverage or not. The fact is that the motor vehicle was undeniably insured.

The announced purpose of the No-Fault Act is to relieve the economic distress of auto accident victims, but it goes on to say this is met by "prompt payment of specified basic economic loss benefits * * *." Minn.Stat. § 65B.42(1) (1984). Here claimant Fryer promptly received workers' compensation benefits and, if he had not been eligible for these, would have promptly received no-fault benefits. Of course, unnecessary delay in payment of compensation, whether of no-fault benefits, uninsured motorist benefits, or any other kind of compensation, is not favored, but this consideration is of no particular assistance here in interpreting a policy definition of an uninsured motor vehicle. It is also true that arbitration is favored as a speedy, informal and relatively inexpensive means of resolving disputes. It is because this is so that the arbitration panel in this case was allowed to proceed; but arbitration only resolved the tort liability and damages issues, leaving the coverage question for ultimate resolution by the courts.

We hold, therefore, that under National Union's policy provision for uninsured motorist coverage, wherein an uninsured motor vehicle is defined as one where the liability insurer denies coverage, where the liability carrier denies coverage for the involved motor vehicle but subsequently admits coverage prior to the arbitration hearing, such motor vehicle is *not* an uninsured motor vehicle within the meaning of the policy provision.

If this were all to the case, we would vacate the arbitration award on the ground that there was no uninsured motorist claim to present to the arbitration panel and, therefore, the panel exceeded its powers. Claimant Fryer argues we should nevertheless confirm the arbitration award because, even if there is no uninsured motorist claim, there is a claim for *underinsured* motorist coverage. Fryer does not elaborate on how this might be, and National Union ignores the argument.

■ We cannot, however, overlook the second of National Union's four definitions of an uninsured motor vehicle, namely, the second definition, which states an uninsured motor vehicle is a motor vehicle:

> For which the sum of all liability bonds or policies at the time of an *accident* provides at least the amounts required by the applicable law where a covered *auto* is principally garaged but their limits are less than the limit of this insurance.

*See* footnote 1, *supra* (definition b). This definition describes the vehicle that rear-ended Fryer. The term "covered auto" refers to the auto insured by National Union, namely, the Brooklyn Center squad car, which was garaged, we feel safe in saying, in Minnesota, and for which "25/50" residual liability limits are required. Minn.Stat. § 65B.49, subd. 3

(1984). Since American Family's single person bodily injury liability limit of $25,000, with or without Illinois Farmers' $25,000, provides at least the amount required by Minnesota law and since the combined limits of these two policies are less than the $500,000 uninsured motorist limit in the National policy, the vehicle which struck Fryer is "uninsured" under definition b.

This definition of an *uninsured* motor vehicle is sometimes used to describe an *underinsured* vehicle.[2] Although it need not have done so, National Union has chosen to afford "uninsured" motorist coverage where the tortfeasor's vehicle is not truly uninsured, but where its liability coverage is less than the uninsured motorist coverage in the insured's own policy. Following oral argument, we asked the parties to brief the applicability of definition b. In its response, National Union concedes that this definition describes the vehicle which struck Fryer, but argues that it merely duplicates the policy's underinsured coverage. Fryer maintains that definition b is simply misplaced, that it belongs in the underinsured motorist endorsement, and is inapplicable.

We cannot, however, ignore the plain wording of National Union's policy. We hold that the motor vehicle which rear-ended Fryer's squad car was an "uninsured motor vehicle" under definition b. It follows that on April 25, 1983, the arbitration panel had before it a proper, arbitrable "uninsured motorist claim" and that the panel did not exceed its powers in deciding the claim. The arbitration award, therefore, is confirmed.

■ This leads, however, to another question. Paragraph B(2) of National Union's uninsured motorist endorsement contains an "exhaustion clause," namely:

2. *E.g., Lick v. Dairyland Insurance Co.,* 258 N.W.2d 791, 793 (Minn.1977); *see also* N.C.Gen. Stat. § 20–279.21(b)(4) (1979). The definition is also commonly used to describe an uninsured motor vehicle. *See* J. Appleman, 8c *Insurance Law and Practice* § 5066.15 at pp. 11–12 (1981). *See generally* A. Widiss, *A Guide to Uninsured Motorist Coverage* §§ 2.37–2.38a at 121–29 (1981

Supp.) (for a discussion of the evolution of uninsured and underinsured motorist insurance and the considerable overlap between the two coverages). We do not know how National Union defined an underinsured motor vehicle because its underinsured motorist endorsement is not a part of the record.

If this insurance provides a limit in excess of the amounts required by the applicable law where a covered auto is principally garaged, we will pay only after all liability bonds or policies have been exhausted by judgments or payments.

In its motion before the trial court to vacate the arbitration award, National Union cited this "exhaustion clause" in support of an alternative motion to modify the award to make it payable only after all liability policies had been exhausted. The trial court rejected the alternative motion, stating, "there is no indication in the record of what the limit of insurance was, where a covered auto was principally garaged, nor what the limits of coverage required are." At oral argument, we were advised that National Union's declaratory judgment action to determine insurance coverages has now been settled, with American Family paying $25,000 and Illinois Farmers paying some undisclosed sum. In light of this information, we believe that the exhaustion clause applies and that the arbitration award of $69,000 should be reduced by the amounts recovered from the two liability carriers. We remand this case, therefore, to the trial court to modify the arbitration award as required by the exhaustion clause. It is, of course, appropriate for the trial court to receive evidence on the terms of the settlement of the liability coverage, because this involves a question of the uninsured motorist coverage. *See Woog, supra; Matter of Markley*, 298 N.W.2d 27, 28 (Minn.1980).

### III.

The next issue is whether the award is to be reduced by the amount of workers' compensation benefits paid to Fryer. The Court of Appeals said no, and we agree.

■ First of all, the parties dispute whether the $69,000 awarded includes damages compensable under the Workers' Compensation Act. It would not be for us as an appellate court to resolve a factual dispute, but here there is none. The arbitration award unqualifiedly recites that the

$69,000 is for "Fryer's damages as a result of the automobile accident." Nor did claimant Fryer, who had asked the panel for $150,000 damages, seek any clarification of the award after it was made. We conclude the arbitration award is for all damages.

■ National Union then argues that it is unfair for Fryer to recover twice for certain items of damages, and that the workers' compensation insurer should be subrogated to the arbitration award for uninsured motorist benefits. The Court of Appeals properly dismissed this contention, relying on *Cooper v. Younkin*, 339 N.W.2d 552 (Minn.1983). (Parenthetically, we note that any recovery made by claimant Fryer on the liability coverages of American Family and Illinois Farmers might be subject to the city's workers' compensation subrogation claim.)

■ National Union also claims that the limitation of liability clause in its policy, which provides that liability for uninsured motorist benefits be reduced by all sums paid or payable under workers' compensation, should apply. National Union concedes that in *Brunmeier v. Farmers Insurance Exchange*, 296 Minn. 328, 208 N.W.2d 860 (1973), this court held such a limitation clause invalid. National Union points out, however, that *Brunmeier* was decided before the No-Fault Act. National Union argues that because no-fault benefits can now be deducted from a tort recovery, so should workers' compensation benefits which are paid in lieu of no-fault benefits. We adhere, however, to our *Brunmeier* holding. National Union's limitation of liability clause would shift the burden of loss for an auto accident from the auto injury reparations system to the workers' compensation system, and is inconsistent with the legislative coordination of the various reparation payments. We hold that National Union's limitation of liability clause is unenforceable.

Affirmed in part and reversed in part and remanded.