**Debbie PENLAND, Appellant,**

v.

**TRAVELERS INSURANCE COMPANY, Respondent.**

**No. C5-87-1118.**

Court of Appeals of Minnesota.

Oct. 13, 1987.

George H. Smith, Minneapolis, for appellant.

Linc S. Deter, Minneapolis, for respondent.

Considered and decided by FORSBERG, P.J., and LANSING and NIERENGARTEN, JJ., with oral argument waived.

## OPINION

FORSBERG, Judge.

Debbie Penland appeals from a grant of summary judgment to respondent Travelers Insurance Company in this declaratory judgment action. We affirm.

## FACTS

On October 10, 1981, Penland was a passenger in a vehicle owned and driven by Willie Leon Wilson when it was struck by a vehicle owned and operated by Trent Spreeman. Penland and Wilson both had insurance policies with Travelers; Penland's policy carried limits of $50,000 and Wilson's carried limits of $25,000. Spreeman was insured under a policy issued by American Family Insurance Company with limits of $25,000.

Penland settled with American Family for Spreeman's policy limits of $25,000. She then settled with Travelers for $25,000 under her own policy's definition of uninsured motor vehicle. A release was executed discharging Travelers with regard to her "underinsured motorist policy," but specifically reserving any claim Penland might have against Travelers under Wilson's policy.

Penland thereafter commenced this declaratory judgment to collect uninsured benefits under the terms of Wilson's policy. In a memorandum attached to its order denying Penland's motion for summary judgment and granting Travelers' motion, the trial court stated:

[Penland's] argument that she is entitled to uninsured coverage under Mr. Wilson's policy begins with the proposition that she is an insured under the policy by virtue of being an occupant of Mr. Wilson's car. This is a correct interpretation of the following language of this "plain-language" policy:

"*You* and a *relative* are *insureds.* Any one else while *occupying your car* if the *occupancy* is (or is reasonably believed to be) with your permission, or while *occupying* a *non-owned car* which *you* are operating with the owner's permission, is also an *insured.*" (Emphasis in original.)

[Penland] then argues that she is entitled to uninsured motorist coverage under Mr. Wilson's policy because the liability limit of his policy ($25,000.00) is less than the liability limit of her own policy with Travelers ($50,000.00). The uninsured motorist coverage provision of Mr. Wilson's policy reads in relevant part as follows:

"Definition

*Uninsured motor vehicle* means a *highway vehicle* or trailer of any type:

\* \* \* \* \* \*

2. to which a bodily injury liability insurance policy or bond applies at the time of the accident, but with limits of liability less than the applicable uninsured motorists limits of liability provided under this policy." (Emphasis in original.)

The fallacy in [Penland's] argument is evident. As noted, [Penland] has already claimed and received uninsured motorist coverage benefits pursuant to her own policy of insurance. Thus, for purposes of this action, she is no longer an insured under her own policy; rather, she is an insured only under Mr. Wilson's policy and she is seeking uninsured motorist coverage benefits under his policy only. It follows that the limits of Mr. Wilson's uninsured motorist coverage must be compared with the limits of Mr. Spreeman's liability coverage in order to determine if the Spreeman vehicle was an uninsured motor vehicle under the policy definition. Since both coverages are the same—$25,000.00—the policy definition of uninsured motor vehicle is not satisfied and the Spreeman vehicle is therefore not considered to be an uninsured motor vehicle.

Based upon the undisputed facts of this case and upon the foregoing analysis, the Court finds that [Travelers] is entitled to summary judgment as a mat-

ter of law and that [Penland's] claims for uninsured motorist coverage benefits must be dismissed.

This appeal followed entry of judgment.

## ISSUE

Did the trial court err in concluding that Penland is not entitled to uninsured motorist coverage under Wilson's policy?

## ANALYSIS

Penland is an insured under Wilson's policy as an occupant of his car. That policy provides uninsured motorist coverage for damages "that the insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle." (Emphasis deleted.) The policy further provides in pertinent part:

Uninsured motor vehicle means a highway vehicle * * * of any type:

1. to which no bodily injury liability insurance policy or bond applies at the time of the accident.

2. to which a bodily injury liability insurance policy or bond applies at the time of the accident, but with limits of liability less than the applicable uninsured motorists limits of liability provided by this policy.

(Emphasis deleted.)

Penland asserts entitlement to coverage under definition 2, which admittedly provides coverage *similar* to underinsured motorist coverage. It does not, however, provide coverage in this instance because neither Wilson's vehicle nor Spreeman's vehicle fits definition 2. Wilson's own vehicle is expressly excluded from the definition of uninsured motor vehicle. Nor can Spreeman's vehicle be considered an uninsured motor vehicle because the liability limits of the policy covering Spreeman's vehicle are equal to (and not less than) the liability limits of Wilson's policy. *But compare Hoeschen v. South Carolina Insurance Co.*, 378 N.W.2d 796, 799 (Minn.1985) (where insured elected to purchase separate underinsured motorist coverage, supreme court declined to construe policy provision substantially identical to the one involved here so as to totally eliminate underinsured motorist coverage from the policy).

Penland nevertheless argues that Wilson's policy should be construed to provide underinsured motorist coverage in this instance. She relies upon *Fryer v. National Union Fire Insurance Co.*, 365 N.W.2d 249 (Minn. 1985). In *Fryer*, a police officer was injured when his patrol car was rear-ended by another vehicle. The driver of the vehicle was insured under a policy issued by American Family Insurance Group with limits of $25,000; the owners of the vehicle had a policy issued by Illinois Farmers Insurance Group with limits of $25,000; the city possessed a policy issued by National Union Fire Insurance Company with uninsured motorist coverage limits of $500,000.

The insurers of both the driver and the owner eventually tendered the limits of their policies. The supreme court agreed with National Union that the police officer was no longer uninsured and that there was no claim for uninsured motorist coverage. *Id.* at 254.

The court next examined whether there was a claim for underinsured motorist coverage under the following policy definition of uninsured motor vehicle:

b. For which the sum of all liability bonds or policies at the time of an accident provides at least the amounts required by the applicable law where a covered auto is principally garaged but their limits are less than the limit of this insurance.

*Id.* (emphasis deleted). The court reasoned:

This definition describes the vehicle that rear-ended Fryer. The term "covered auto" refers to the auto insured by National Union, namely, the * * * squad car, which was garaged, we feel safe in saying, in Minnesota, and for which "25/50" residual liability limits are required. Minn.Stat. § 65B.49, subd. 3 (1984). Since American Family's single person bodily injury liability limit of $25,000, with or without Illinois Farmers' $25,000, provides at least the amount required by Minnesota law and since the

combined limits of these two policies are less than the $500,000 uninsured motorist limit in the National policy, the vehicle which struck Fryer is "uninsured" under definition b.

This definition of an *uninsured* motor vehicle is sometimes used to describe an *underinsured* vehicle. Although it need not have done so, National Union has chosen to afford "uninsured" motorist coverage where the tortfeasor's vehicle is not truly uninsured, but where its liability coverage is less than the uninsured motorist coverage in the insured's own policy. * * *

We cannot * * * ignore plain wording of National Union's policy. We hold that the motor vehicle which rear-ended Fryer's squad car was an "uninsured motor vehicle" under definition b.

*Id.* (emphasis in original) (footnote omitted).

Similarly, in this case Travelers chose to afford "uninsured" motorist coverage where a tortfeasor's vehicle is not truly uninsured, but where its liability coverage is less than the uninsured motorist coverage in Wilson's policy. Given that Wilson's policy provided the minimum liability limits required by Minnesota law ($25,000 per person), it would admittedly be impossible for any vehicle insured under Minnesota law to fit definition 2: a vehicle with liability limits less than $25,000 per person. Nonetheless, definition 2 is not entirely without meaning because coverage would clearly be provided if a tortfeasor's vehicle is registered in another state with lower liability limits.

Had Wilson elected to purchase underinsured motorist coverage and had his policy contained the same definition of uninsured motor vehicle, we would have to construe the policy language to provide coverage in this case. *See Hoeschen,* 378 N.W.2d at 799. However, underinsured motorist coverage was not mandatory at the time his policy was issued and Wilson did not separately purchase such coverage. Because neither the Wilson vehicle nor the Spreeman vehicle fit within the definition of uninsured motor vehicle, we affirm the tri-

al court's grant of summary judgment to Travelers.

Finally, Travelers seeks its costs and disbursements on appeal. As the prevailing party, Travelers may apply for these amounts under Minn.R.Civ.App.P. 136.

### DECISION

Affirmed.