NO.   94-239

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

JENNIFER NIMMICK,

        Plaintiff and Respondent,

    v.

STATE FARM MUTUAL
AUTOMOBILE INSURANCE COMPANY,

        Defendant and Appellant

APPEAL FROM:    District Court of the Eighth Judicial District,
                In and for the County of Cascade,
                The Honorable Thomas M. McKittrick, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

            Lon T. Holden and Francis X. Clinch, Jardine,
            Stephenson, Blewett & Weaver, P.C., Great
            Falls, Montana

        For Respondent:

            William J. Gregoire, Smith, Walsh, Clarke
            & Gregoire, Great Falls, Montana

Submitted on Briefs:   November 3, 1994

                    Decided:   March 23, 1995

Filed:

FILED

MAR 23 1995

Ed Smith
CLERK OF SUPREME COURT.
STATE OF MONTANA

_____
                Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

State Farm Mutual Automobile Insurance Company (State Farm) appeals the decision of the Eighth Judicial District Court, Cascade County, which concluded that Tammy Sobieck (Sobieck) was an uninsured motorist under the terms of Jennifer Nimmick's (Nimmick) State Farm policy. We affirm in part and reverse in part.

As rephrased by this Court, the issues are:

1. Did the District Court err in determining that, prior to Nimmick's settlement with Employers Mutual Insurance Company (Employers Mutual), Sobieck was an uninsured motorist pursuant to the terms of Nimmick's State Farm insurance policy?

2. Did the District Court err in determining that Nimmick's settlement with Employers Mutual did not affect Sobieck's status as an uninsured motorist?

Nimmick filed a complaint in the Fourth Judicial District Court, Ravalli County, Montana, alleging the following facts. On May 17, 1990, Sobieck drove an automobile in which Chris White, Allissa Mattson and Nimmick were passengers. The automobile belonged to Sobieck's boyfriend, Cory Harmon, and was insured by Employers Mutual. Sobieck lost control of the vehicle which ultimately left the road and struck a tree, injuring Nimmick. The complaint accused Harmon of negligent entrustment, White of negligently instructing Sobieck in the operation of a vehicle with which she was unfamiliar and Sobieck of negligent operation of a motor vehicle.

2

Nimmick's parents maintained automobile insurance with State Farm at the time of the 1990 accident. While the Ravalli County complaint was pending, Nimmick was also negotiating with State Farm. Nimmick sought to recover under the uninsured motorist provision, claiming that since Employers Mutual denied coverage, the vehicle was uninsured under the terms of the State Farm policy.

Nimmick subsequently entered into a settlement agreement with Employers Mutual, and the Ravalli County cause of action was dismissed. Employers Mutual paid Nimmick $200,000. In the settlement agreement, Employers Mutual stated that it believed that Harmon and White were "likely to have insurance coverage for their liabilities." The settlement was made expressly on behalf of Harmon and White but not on behalf of Sobieck. The settlement released Harmon and White **from** any and all future liability or claims arising from the accident. Pursuant to the settlement agreement, the **claims** against Harmon and White were dismissed.

The settlement agreement purported not to be a release of Sobieck, claiming that the $200,000 payment was not made on her behalf. While the Employers Mutual policy covered Harmon and White, the settlement agreement denied that the policy covered Sobieck.

However, the agreement also explained, at **some** length, what rights Nimmick relinquished in relation to further action against Sobieck. The complaint against Sobieck was to be dismissed without

3

prejudice. Nimmick covenanted that neither she nor her heirs or assignees would execute against Sobieck's personal assets. The settlement agreement specifically reserved State Farm's right to seek subrogation against Sobieck. The terms and conditions of the settlement agreement, proposed by Nimmick, were drafted to accomplish two goals: (1) to establish that the $200,000 payment was made on behalf of Harmon and White, not Sobieck, and (2) to preserve Nimmick's right to seek recovery under her uninsured motorist coverage with State Farm.

On December 29, 1992, Nimmick filed a complaint against State Farm in the Eighth Judicial District Court, Cascade County, Montana. Nimmick claimed that the vehicle in which she was riding at the time of the accident was an uninsured motor vehicle as defined by her parents' State Farm policies. The basis of the claim was that since Sobieck, the unauthorized driver at the time of the accident, was not covered under the Employers Mutual policy, Nimmick is entitled to uninsured vehicle coverage under the State Farm policy.

On April 15, 1993, State Farm moved for summary judgment, arguing that Nimmick was not entitled to uninsured vehicle coverage under the State Farm policy. The District Court denied State Farm's motion, concluding that Sobieck was an uninsured motorist. The parties stipulated to the District Court entering a judgment on the issue of uninsured vehicle coverage pursuant to Rule 54(b), M.R.Civ.P. State Farm appeals.

4

ISSUE 1

Did the District Court err in determining that, prior to Nimmick's settlement with Employers Mutual, Sobieck was an uninsured motorist pursuant to the terms of Nimmick's State Farm insurance policy?

Our standard of review of a district court's summary judgment ruling is the same as that initially used by the district court. Cooper v. Sisters of Charity (1994), 265 Mont. 205, 207, 875 P.2d 352, 353. We examine the record to determine whether a genuine issue of fact exists. If there is no genuine issue of fact, we determine whether the moving party is entitled to judgment as a matter of law. Cooper, 875 P.2d at 353. We review district court conclusions of law to determine if the court's interpretation of the law is correct. Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603. The District Court concluded that "Tammy Sobieck was an uninsured driver by definition under [the State Farm] insurance policy."

Nimmick's State Farm policy defines an uninsured motor vehicle as a vehicle which is "uninsured" as to its ownership, maintenance or use. This policy language reads:

> We will pay damages for *bodily injury an insured* is legally entitled to collect from the owner or driver of an *uninsured motor vehicle.* The *bodily injury* must be caused by accident arising out of the operation, maintenance or use of an *uninsured motor vehicle.*
> *Uninsured Motor Vehicle* -- means :
>     1. a land motor vehicle, the ownership, maintenance or use of which is: . . . [Italics in original; underscore added.1

5

We have interpreted this policy language to provide uninsured motor vehicle coverage "if there is no insurance as to either [the vehicle's] ownership or its maintenance or its use." State Farm Auto. Ins. Co. v. Taylor (1986), 223 Mont. 215, 218, 725 P.2d 821, 823 (citing Finney v. Farmers Ins. Co. (Wash. App. 1978), 586 P.2d 519, 526, aff'd, 600 P.2d 1272 (Wash. 1979)). Thus, even though the ownership of the vehicle in this case was insured by Harmon's Employers Mutual policy, the vehicle was "uninsured" pursuant to Nimmick's State Farm policy if Sobieck's use of the vehicle was not insured.

Nimmick's State Farm policy goes on to define an uninsured motor vehicle as a vehicle, the ownership, maintenance or use of which is:

a. not insured or bonded for bodily injury liability at the time of the accident; or

b. insured or bonded for bodily injury liability at the time of the accident; but
1) the limits of liability are less than required by the financial responsibility act of the state where *your car* is mainly garaged; or
2) the insuring company denies coverage or is or becomes insolvent [Italics in original; underscore added.1

Employers Mutual initially denied coverage of Sobieck's use of the vehicle. Therefore, in regard to any claim against Sobieck, the vehicle was uninsured under the express terms of the State Farm policy. Even though the Harmons maintained an insurance policy on the vehicle, Employers Mutual's denial of coverage rendered the vehicle uninsured under the State Farm policy. Nimmick's State

6

Farm policy's uninsured vehicle provision therefore applied to any claims against Sobieck arising from the accident.

We conclude that the District Court properly determined that, prior to Nimmick's settlement with Employers Mutual, Sobieck was an uninsured motorist pursuant to the terms of Nimmick's State Farm insurance policy.

## ISSUE 2

Did the District Court err in determining that Nimmick's settlement with Employers Mutual did not affect Sobieck's status as an uninsured motorist?

State Farm argues that while Sobieck may have originally been an uninsured motorist because Employers Mutual initially denied her claim, her status was altered when Nimmick entered into a settlement agreement with Employers Mutual. State Farm claims that the settlement between Employers Mutual and Nimmick was not solely on behalf of Harmon and White, but rather was on behalf of Sobieck as well.

State Farm relies on a series of cases which stand for the proposition that if the liability insurer initially denies coverage, but later settles with the injured party on behalf of the liable party, the liable party is not "uninsured" and thus the injured party may not recover from his or her own uninsured motorist coverage.. It is immaterial whether the insurer continues to deny coverage if it in fact settles on behalf of the liable party. See Jones v. Sentry Insurance Co. (Ct.App.Minn. 1990), 462

7

N.W.2d 90; Fryer v. National Union Fire Ins. Co. (Minn. 1985), 365 N.W.2d 249; Coleman v. Florida Insurance Guaranty Assoc. Inc. (Fla. 1988), 517 So.2d 686; Rister v. State Farm Mut. Auto. Ins. Co. (Mo.App. 1984), 668 S.W.2d 132.

For example, in Rister, Ricky Rister was killed when the pickup truck in which he was a passenger collided with a fuel transport truck. Rister, 668 S.W.2d at 133. In a suit brought by Rister's family, the insurer of the pickup denied coverage for the driver, invoking the "fellow employee" exclusion in its policy. The insurer of the pickup later settled with Rister's family, and the claims against the driver's estate were dismissed. The Missouri Court of Appeals concluded that, although the insurer of the pickup initially denied coverage, the settlement with Rister's family revoked the initial denial. Rister, 668 S.W.2d at 134-35. Since Rister's family recovered insurance benefits on behalf of the driver, he was no longer considered uninsured. Therefore, the Risters could no longer pursue their uninsured motorist claim against Rister's own insurance company.

We must examine the terms of the settlement agreement to determine if the settlement was in fact on behalf of Sobieck. We first note that Nimmick proposed the relevant terms of the agreement to further her attempt to recover from both Employers Mutual and State Farm. The agreement states, in relevant part:

> Nimmick proposed the basic terms of this agreement for
> the sole purpose of (i) settling her disputes with Harmon

8

and White and (ii) <u>protecting her **claims** under the</u> <u>underinsured and uninsured provisions of her insurance</u> <u>policy with State Farm Insurance Company ("State Farm</u> <u>Policy") and (iii) reaching a **settlement** which would</u> <u>**comply** with all of the terms and provisions of said State</u> <u>Farm Policy</u> . [Emphasis added. ]

Any ambiguities must be construed against the drafter. Wyman v. DuBray Land Realty (1988), 231 Mont. 294, 298, 752 P.2d 196, 199. In determining the contract's purpose and intent, we examine the contract as a whole, giving no special deference to any specific clause. Peterson v. Hopkins (1984), 210 Mont. 429, 684 P.2d 1061; St. Paul Fire and Marine Ins. Co. v. Cumiskey (1983), 204 Mont. 350, 665 P.2d 223.

After reviewing the settlement agreement as a whole, we conclude that the settlement was made on behalf of Sobieck as well as Harmon and White. First, we note that Sobieck was a party to the settlement agreement. Had the settlement not been on her behalf, she would not have been included as a party to the agreement. The terms of the settlement also indicate that it was in fact made on her behalf. The settlement agreement reads, in relevant part:

In consideration of the **mutual** understandings and promises contained herein, the parties hereto hereby covenant and agree as follows:

b(1). Execute a covenant not to execute against Sobieck's personal assets wherein Nimmick and her parents, on behalf of themselves, their agents, heirs, successors, and assigns, shall covenant that they (and all of them) shall never initiate, pursue, or levy any execution for any judgment (obtained or obtainable) against Sobieck, and shall likewise forever forebear to

9

collect (or attempt to collect) any amount as a debt, obligation, or otherwise, relating to any of Nimmick's claimed injuries arising from the Accident, from the personal assets of Sobieck or any member of Sobieck's family. This covenant is not intended to affect any right of State Farm, if any, to seek subrogation.

b(2). Execute an agreement not to assign any action, claim or judgment of Nimmick against Sobieck to any other person or entity, including without limitation Mid-Century Insurance Company or any of its affiliates or State Farm *Insurance* Company or any of its affiliates.

**c**. Dismiss Nimmick's Complaint in the tort action against Sobieck without prejudice

f. Execute a full, final and unconditional release of Employers Mutual for any and all claims under Section 33-18-201 and 33-18-242, Montana Code Annotated, in respect of any claims arising from Tammy Sobieck's putative status as an insured under the Employer's Mutual Policy.

In light of this broad sweeping release language, it is disingenuous for Nimmick to claim the settlement was not made on Sobieck's behalf. A basic premise of contract law is mutuality of consideration. See Richardson v. Safeco 'Insurance Co. (1983), 206 Mont. 73, 76, 669 P.2d 1073, 1074. The language above, which releases Sobieck from financial responsibility for the accident, clearly appears to be in exchange for the monetary settlement with Employers Mutual. We do not believe releasing Sobieck was a gratuitous act on Nimmick's part.

Nimmick relies on the purported reservation of State Farm's right of subrogation found in the settlement agreement. As previously stated, the terms of the settlement agreement state:

This covenant is not intended to affect any right of State Farm, if any, to seek subrogation.

10

Nimmick argues that because the settlement agreement reserved State Farm's right to seek subrogation against Sobieck, she has not been "released" from liability for Nimmick's injuries. Nimmick claims that because Sobieck is still potentially liable to State Farm under a subrogation action, she has not been released and, therefore, the settlement with Employers Mutual was not on her behalf.

This argument is faulty for several reasons. First, an insurer's subrogation right vests upon its payment of a claim. One authority summarized this principle as follows:

> No right of subrogation arises until the claim has been paid. [Footnote omitted.] Thus, before subrogation can be had, the insurer must have paid the insured his loss according to the contract, for it is this securing of satisfaction by the insured which gives the insurer the right to be subrogated to the rights of the insured against a wrongdoer primarily liable for the loss. [Footnote omitted.]

16 Couch on Insurance 2d, § 61:49 (1983). This principle is well-established in our case law. See St. Paul Fire and Marine v. Allstate (1993), 257 Mont. 47, 51, 847 P.2d 705, 707; Skauge v. Mountain States Tel. & Tel. Co. (1977), 172 Mont. 521, 525, 565 P.2d 628, 630

In this case, State Farm has not paid any benefits to Nimmick. Therefore, State Farm does not have a vested right to seek subrogation against Sobieck

Secondly, an insurer seeking subrogation has only those rights maintained by its insured. The insurer steps into its insured's shoes. Therefore, in a subrogation action, the insurer sues the

purported tortfeasor in place of its insured.  In St. Paul Fire &
Marine v. Glassing (1994),    P.2d___, 51 St.Rep. 1437, we adopted
language from Couch on Insurance in stating:

> The right of subrogation is purely derivative as the
> insurer succeeds only to the rights of the insured, and
> no new cause of action is created.  In other words, the
> concept of subrogation merely gives the insurer the right
> to prosecute the cause  of action which the insured
> possessed against anyone legally responsible for the
> latter's    harm   .

Glassing, 51 St.Rep. at 1439,  (citing 16 Couch on Insurance 2d, §
61:37 (1983)).

In this case, Nimmick executed broad sweeping covenants not to
execute against the personal assets of  Sobieck or her family.
State Farm,  stepping  into Nimmick's shoes,  has likewise been
limited from executing against Sobieck.   While the settlement
agreement purports to maintain State Farm's right of subrogation,
this subrogation right, if any, is very limited.

By severely limiting or destroying State Farm's right of
subrogation, Nimmick further released Sobieck from any potential
liability  arising  from the accident.   In a section entitled
"Release of Tortfeasor and Effect Thereof," Couch on Insurance
states:

> If the *employer's* or insurance carrier's statutory
> right of  subrogation  is  impaired by the act of the
> employee in settling with the wrongdoer, the employee's
> right  to compensation  is  barred.
>
> A covenant not to levy against the tortfeasor by the
> insured destroys the right to subrogation, [footnote

12

omitted1 <u>and as such may bar the insured's recovery under</u>
<u>the policy</u>.    [Emphasis    added.]

16 Couch on Insurance 2d, § 61:191 (1983).   By inhibiting subroga-
tion, Nimmick has barred her claim against State Farm.

After examining the settlement agreement and its underlying
effects as a whole, we conclude that the settlement between
Employers Mutual and Nimmick was made on behalf of Sobieck as well
as Harmon and White.   Because the settlement was on behalf of
Sobieck, she is no longer an uninsured motorist under the terms of
Nimmick's State Farm policy.   We affirm as to issue one and reverse
as to issue two the decision of the District Court.

Chief Justice

We concur:

Justices

Justice W. William Leaphart specially concurring.

I concur in the result. However, I think the Court has needlessly relied upon both subrogation and insurance contract analyses. Despite the document's protestations to the contrary, the settlement agreement between Nimmick and Employers Mutual did include Sobieck. Sobieck was a signatory to the settlement and Nimmick gave Sobieck a covenant not to execute against her assets or those of her family. As the Court correctly points out, because the settlement was on behalf of Sobieck, she is no longer an uninsured motorist under the terms of Nimmick's State Farm policy. The Court does not need to further analyze the case in terms of subrogation theory because a right of subrogation does not even arise unless there is coverage under the policy resulting in payment by the insurer. Here, although Sobieck initially fit the definition of an uninsured motorist under the terms of the policy, the subsequent settlement changed her status.

Since the Court does engage in subrogation analysis, I must observe that, strictly in the context of subrogation law, I would reverse and remand for a determination as to whether or not Sobieck had any assets with which to respond to State Farm's potential subrogation claim. In other words, I would adopt a "no prejudice" rule whereby a settlement with a tortfeasor would not release an insurer such as State Farm if the plaintiff could show that the tortfeasor was judgment proof and, thus, there was no prejudice to the insurer. However, in the context of an uninsured motorist's

14

policy, if the insured (Nimmick) entered into an insurance settlement with the tortfeasor (Sobieck), regardless of the amount, Sobieck is no longer "uninsured" under the State Farm policy and there is no insurance coverage. In the absence of coverage and payment by State Farm, the right of subrogation does not come into play. Thus, the question of whether State Farm has, in fact, been prejudiced is not an issue.

_____
Justice

15

Justice Terry N. Trieweiler dissenting.

I dissent from the majority opinion.

The only issue in this case is whether Tammy Sobieck is an uninsured driver within the meaning of the insurance policy provided by State Farm to Jennifer Nimmick. That policy provided, in relevant part, that:

> We will pay damages for *bodily injury* an *insured* is legally entitled to collect from the owner <u>or driver</u> of an *uninsured motor vehicle. . . .*
> *Uninsured Motor Vehicle* -- means :
> 1. a land motor vehicle, the ownership, maintenance <u>or use of which</u> is:
>    a. not insured . . . .

(Underlining added.)

Tammy Sobieck's use of Cory Harmon's vehicle was not insured.

Cory Harmon's vehicle was insured by Employers Mutual Companies. The policy which was issued to him, and which applied to the vehicle being driven by Tammy Sobieck at the time of her accident, had the following exclusion:

> A. We do not provide Liability Coverage for any person:
> . .
> 8. Using a vehicle without a reasonable belief that that person is entitled to do so.

According to the deposition testimony of Cory Harmon taken in Employers Mutual's Ravalli County declaratory judgment action, Tammy Sobieck did not have permission to operate the Harmon vehicle at the time and place where she negligently caused Jennifer Nimmick's injuries. Based on the arguments of the parties in

16

District Court and on appeal, that testimony is uncontroverted and assumed to be true for purposes of the issue involved in this proceeding. Therefore, based on the plain language of the State Farm and Employers Mutual policies, Tammy Sobieck was uninsured when she negligently lost control of Cory Harmon's vehicle and caused severe injuries to Jennifer Nimmick. Because she was uninsured, and pursuant to our prior decision in *State Farm Mutual Automobile Insurance Co. v. Taylor* (1986), 223 Mont. 215, 218, 725 P.2d 821, 823, the majority correctly notes that uninsured coverage was *initially available* pursuant to the *terms* of the State Farm policy. That should be the end of our analysis.

However, based on decisions from other jurisdictions which are factually inapposite to this case, the majority concludes that an uninsured driver can become an insured driver because of references to that person in a settlement agreement in which third persons are released.

In all of the cases relied on by the majority, settlement amounts were ultimately paid on behalf of the person for whom coverage was originally denied. *See Jones v. Sentry* Ins. Co. (Minn. Ct. App. 1990), 462 N.W.2d 90; *Fryer v. National Union Fire Ins. Co.* (Minn. 1985), 365 N.W.2d 249; *Coleman v. Florida Ins. Guaranty Assn., Inc.* (Fla. 1988), 517 So.2d 686; *Rister v. State Farm Mut. Auto. Ins. Co.* (Mo. Ct. App. 1984), 668 S.W.2d 132.

17

For example, in the *Rister* decision, the Missouri Court of Appeals simply held that where an uninsured motorist claim is based on an insurer's denial of coverage, the unconditional withdrawal of that denial precludes uninsured coverage.

Both the *Jones* decision, and the *Fryer* decision merely stand for the principle that:

> [W]here the liability carrier denies coverage for the involved motor vehicle but subsequently admits coverage prior to the arbitration hearing, such motor vehicle is not an uninsured motor vehicle within the meaning of the policy provision.

*Fryer*, 365 N.W.2d at 254.

The Florida Supreme Court's decision in *Coleman* has nothing to do with the issue involved in this case, but instead relates to when an insured may stack a number of uninsured motorist coverages for which he had paid more than one premium. The case does make passing reference to when an injured party can recover under his or her own uninsured motorist policy, but only in the context of Florida law. The reference has nothing to do with the policy provisions involved in this case, nor the facts involved in this case.

Here, denial of coverage for Sobieck was never withdrawn. Employers Mutual denied coverage for Sobieck the first time a claim was filed, and denied coverage for Sobieck when it ultimately paid money to Nimmick on behalf of Cory Harmon and Chris White.

18

There is nothing similar about this case and those authorities relied on by the majority.

The settlement agreement upon which the majority opinion is based begins by pointing out that Sobieck did not have permission to drive Harmon's car at the time of Nimmick's accident. The agreement specified that while Cory Harmon was an insured according to the terms of Employers Mutual's liability policy, and that while there was a possibility the District Court would conclude that Chris White was also covered, Employers Mutual continued to deny any coverage for Tammy Sobieck.

The agreement specifically provided that the settlement amounts paid by Employers Mutual were paid on behalf of White and Harmon, and that only White and Harmon and Employers Mutual were released from liability for Nimmick's injuries. The agreement provided that Nimmick's tort claim against Harmon and White would be dismissed with prejudice, but that any claim against Sobieck would be dismissed without prejudice.

Furthermore, while Nimmick and her parents agreed not to execute against Sobieck's personal assets to recover any damages due them, the agreement specifically provided that "[t]his covenant is not intended to affect any right of State Farm, if any, to seek subrogation."

If these were the terms negotiated in exchange for payment on behalf of Sobieck, they are most inadequate and unlike any other settlement agreement with which I am familiar. To say the least,

19

the terms differed significantly from any of the agreements involved in the cases relied on by the majority.

Based on the language of the agreement entered into between Nimmick and Employers Mutual, I necessarily conclude that nothing therein changed the fact that Sobieck was uninsured based on the plain language of the State Farm and Employers Mutual policies.

Whether or not the majority "believe releasing Sobieck was a gratuitous act on Nimmick's part," is irrelevant. The fact is that based on the plain language in the settlement agreement, Sobieck was not released from future liability for her conduct.

The majority next reasons that since an insurer subrogates to only those rights possessed by its insured, State Farm was prejudiced by Nimmick's waiver of her right to execute against Sobieck's assets. However, the majority's subrogation analysis is incomplete and out of context. Nimmick provided only a partial waiver of the right to execute. She specifically reserved whatever right State Farm could claim by operation of law or pursuant to its contract with her.

The plain terms of Nimmick's agreement with Employers Mutual provided that although neither she nor her parents would execute against Sobieck's assets, State Farm's rights to do so would not in any way be impaired. It is the majority's selective and incomplete discussion of subrogation principles to establish that State Farm's rights have been diminished in spite of plain contract language to

20

the contrary, which is disingenuous--not Nimmick's arguments on appeal.

For these reasons, I would conclude that Sobieck was an uninsured driver at the time she negligently caused Jennifer Nimmick's injuries, and that State Farm's policy, therefore, provided uninsured motorist coverage to Jennifer Nimmick for Tammy Sobieck's conduct.

I would affirm the judgment of the District Court.

_____
us      ce

Justice William E. Hunt, Sr., joins in the foregoing dissenting opinion.

_____
Justice

21