JUSTICE TRIEWEILER
dissenting.
I dissent from the majority opinion.
The only issue in this case is whether Tammy Sobieck is an uninsured driver within the meaning of the insurance policy provided by State Farm to Jennifer Nimmick. That policy provided, in relevant part, that:
We will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. ...
Uninsured Motor Vehicle — means:
1. a land motor vehicle, the ownership, maintenance or use of which is:
a. not insured ....
(Underlining added.)
Tammy Sobieck’s use of Cory Harmon’s vehicle was not insured.
Cory Harmon’s vehicle was insured by Employers Mutual Companies. The policy which was issued to him, and which applied to the vehicle being driven by Tammy Sobieck at the time of her accident, had the following exclusion:
A. We do not provide Liability Coverage for any person:
8. Using a vehicle without a reasonable belief that that person is entitled to do so.
According to the deposition testimony of Cory Harmon taken in Employers Mutual’s Ravalli County declaratory judgment action, Tammy Sobieck did not have permission to operate the Harmon vehicle at the time and place where she negligently caused Jennifer Nimmick’s injuries. Based on the arguments of the parties in District Court and on appeal, that testimony is uncontroverted and assumed to be true for purposes of the issue involved in this proceeding. Therefore, based on the plain language of the State Farm and Em *326 ployers Mutual policies, Tammy Sobieck was uninsured when she negligently lost control of Cory Harmon’s vehicle and caused severe injuries to Jennifer Nimmick. Because she was uninsured, and pursuant to our prior decision in State Farm Mutual Automobile Insurance Co. v. Taylor (1986), 223 Mont. 215, 218, 725 P.2d 821, 823, the majority correctly notes that uninsured coverage was initially available pursuant to the terms of the State Farm policy. That should be the end of our analysis.
However, based on decisions from other jurisdictions which are factually inapposite to this case, the majority concludes that an uninsured driver can become an insured driver because of references to that person in a settlement agreement in which third persons are released.
In all of the cases relied on by the majority, settlement amounts were ultimately paid on behalf of the person for whom coverage was originally denied. See Jones v. Sentry Ins. Co. (Minn. Ct. App. 1990), 462 N.W.2d 90; Fryer v. National Union Fire Ins. Co. (Minn. 1985), 365 N.W.2d 249; Coleman v. Florida Ins. Guaranty Assn., Inc. (Fla. 1988), 517 So.2d 686; Rister v. State Farm Mut. Auto. Ins. Co. (Mo. Ct. App. 1984), 668 S.W.2d 132.
For example, in the Rister decision, the Missouri Court of Appeals simply held that where an uninsured motorist claim is based on an insurer’s denial of coverage, the unconditional withdrawal of that denial precludes uninsured coverage.
Both the Jones decision, and the Fryer decision merely stand for the principle that:
[W]here the liability carrier denies coverage for the involved motor vehicle but subsequently admits coverage prior to the arbitration hearing, such motor vehicle is not an uninsured motor vehicle within the meaning of the policy provision.
Fryer, 365 N.W.2d at 254.
The Florida Supreme Court’s decision in Coleman has nothing to do with the issue involved in this case, but instead relates to when an insured may stack a number of uninsured motorist coverages for which he had paid more than one premium. The case does make passing reference to when an injured party can recover under his or her own uninsured motorist policy, but only in the context of Florida law. The reference has nothing to do with the policy provisions involved in this case, nor the facts involved in this case.
Here, denial of coverage for Sobieck was never withdrawn. Employers Mutual denied coverage for Sobieck the first time a claim was *327 filed, and denied coverage for Sobieck when it ultimately paid money to Nimmick on behalf of Cory Harmon and Chris White.
There is nothing similar about this case and those authorities relied on by the majority.
The settlement agreement upon which the majority opinion is based begins by pointing out that Sobieck did not have permission to drive Harmon’s car at the time of Nimmick’s accident. The agreement specified that while Cory Harmon was an insured according to the terms of Employers Mutual’s liability policy, and that while there was a possibility the District Court would conclude that Chris White was also covered, Employers Mutual continued to deny any coverage for Tammy Sobieck.
The agreement specifically provided that the settlement amounts paid by Employers Mutual were paid on behalf of White and Harmon, and that only White and Harmon and Employers Mutual were released from liability for Nimmick’s injuries. The agreement provided that Nimmick’s tort claim against Harmon and White would be dismissed with prejudice, but that any claim against Sobieck would be dismissed without prejudice.
Furthermore, while Nimmick and her parents agreed not to execute against Sobieck’s personal assets to recover any damages due them, the agreement specifically provided that “[t]his covenant is not intended to affect any right of State Farm, if any, to seek subrogation.”
If these were the terms negotiated in exchange for payment on behalf of Sobieck, they are most inadequate and unlike any other settlement agreement with which I am familiar. To say the least, the terms differed significantly from any of the agreements involved in the cases relied on by the majority.
Based on the language of the agreement entered into between Nimmick and Employers Mutual, I necessarily conclude that nothing therein changed the fact that Sobieck was uninsured based on the plain language of the State Farm and Employers Mutual policies.
Whether or not the majority “believe releasing Sobieck was a gratuitous act on Nimmick’s part,” is irrelevant. The fact is that based on the plain language in the settlement agreement, Sobieck was not released from future liability for her conduct.
The majority next reasons that since an insurer subrogates to only those rights possessed by its insured, State Farm was prejudiced by Nimmick’s waiver of her right to execute against Sobieck’s assets. However, the majority’s subrogation analysis is incomplete and out of context. Nimmick provided only a partial waiver of the right to *328 execute. She specifically reserved whatever right State Farm could claim by operation of law or pursuant to its contract with her.
The plain terms of Nimmick’s agreement with Employers Mutual provided that although neither she nor her parents would execute against Sobieck’s assets, State Farm’s rights to do so would not in any way be impaired. It is the majority’s selective and incomplete discussion of subrogation principles to establish that State Farm’s rights have been diminished in spite of plain contract language to the contrary, which is disingenuous — not Nimmick’s arguments on appeal.
For these reasons, I would conclude that Sobieck was an uninsured driver at the time she negligently caused Jennifer Nimmick’s injuries, and that State Farm’s policy, therefore, provided uninsured motorist coverage to Jennifer Nimmick for Tammy Sobieck’s conduct.
I would affirm the judgment of the District Court.
JUSTICE HUNT joins in the foregoing dissenting opinion.